IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LUCINDA M. YAZZIE,

Plaintiff ,

vs. CIVIL NO. 10-292 BB/LFG

LAW OFFICES OF FARRELL & SELDIN and TARGET NATIONAL BANK,

Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL TARGET NATIONAL BANK**

THIS MATTER is before the Court on Plaintiff Lucinda M. Yazzie's ("Yazzie") Motion to Compel Target National Bank ("Target") [Doc. 39] to respond to her first set of discovery. Specifically, Yazzie requests that the Court require Target to answer or to supplement its answers to Interrogatory Nos. 7, 9, 10, 11, 12, 17, 18, 20 and 23. She further requests that Target produce or supplement its prior production of documents identified in Request for Production Nos. 10, 11 and 14. The Court considered the motion, response [Doc. 45] and reply [Doc. 53]. Oral argument is not necessary.

## Proportionality

All discovery is subject to the cost-benefit proportionality factors set out in Fed. R. Civ. P. 26(b)(2)(C) and 26(g)(1)(B)(iii). The Court is required to limit discovery if it determines that the information sought is unreasonably cumulative, duplicative or can be obtained from other sources that are more convenient, less burdensome or less expensive. The Court may also limit the proposed discovery if the burden or expense of production outweighs its likely benefit, considering the needs

of the case, the amount in controversy, and the importance of the issue at stake. Indeed, it is the Court's primary obligation to balance one party's right of discovery with the opposing party's right to be free from intrusive and burdensome requests.

The Court looks at the following factors in striking the appropriate balance: (1) the requester's need for the information; (2) the relevance of the requested information to the litigation; (3) the burden of producing the sought-after material; and (4) the harm or difficulty which would be caused to a party seeking to protect information. The Court may deny the request altogether, limit the conditions, time, place or topics of discovery, or limit the manner in which the material will be disclosed. Koch v. Koch Indus., Inc., 203 F.3d 1202, 1238 (10th Cir. 2000); Burka v. U.S. Dep't of HHS, 87 F.3d 508, 517 (D.C. Cir. 1996).

In addition to the aforementioned considerations, the Court is also mindful of the congressional admonition from the Civil Justice Reform Act ("CJRA"), 28 U.S.C. §§ 471 *et seq.* It was, after all, abusive, unchecked discovery practices that significantly increased the costs of litigation, congested court dockets, and contributed to delays of the final disposition of litigation that prompted the adoption of the CJRA. Thus, a court is required to view discovery requests with a critical eye.

**Interrogatories**

In Interrogatory No. 7, Yazzie requests Target to describe "all documents that Tiffany Lewis reviewed before signing the affidavit that was attached as Exhibit A to the complaint . . . ." Target answered, under oath, "that its standard practice is that information contained in the Affidavit of Tiffany Lewis, such as the account number, debtor's name, and account balances, are verified to Target's system. Such items as the account names are entered into the system based on the credit

application received by Target." Thus, Target has disclosed the information it reviews as part of its standard business practice. It has answered Yazzie's question.

The Court determines that Target appropriately responded to this interrogatory and therefore does not require a further response.

Interrogatory Nos. 9, 10, 11 and 12 are combined, as Yazzie asks Target whether it believed Yazzie to be the debtor at the time Tiffany Lewis signed the affidavit (No. 9), at the time Target filed the complaint (No. 10) and at the time Target initiated garnishment proceedings (Nos. 11 and 12); and asks Target to state the reason for the belief and to describe documents it had in its possession, custody or control which supported that belief.

Although Target initially objected to each interrogatory, it thereafter stated "that it provides the information such as that contained in the Affidavit of Account and as described in the response to Interrogatory No. 3," which was restated and incorporated. It provided this information to Farrell & Seldin at the time of placing the account with its attorneys for collection service; and, thereafter, Farrell & Seldin performed its collection services.

While Target did answer with the information it had and relied on, it did not specifically answer the first question as to whether Target believed Yazzie to be the debtor. While the answer is taken for granted, Yazzie is entitled to the answer under oath.

Accordingly, the Court requires Target to supplement its answers to Interrogatory Nos. 9 and 10 and to state whether it believed Yazzie was the debtor for the account at the times in question. As to Interrogatory Nos. 11 and 12, Target answers that it was not aware of and not involved in any Writ of Garnishment. Those answers are sufficient and no other supplementation is required.

In Interrogatory No. 17, Yazzie requests a description of the relationship between Target and Farrell & Seldin, and asks for all documents that define the relationship.

Target identifies the relationship between it and Farrell & Seldin as an attorney-client relationship. It objects to identifying all of the documents that define the relationship, and refuses to produce the fee agreement. However, a fee agreement, unlike a confidential communication, is a fact and not governed by the attorney-client privilege. In re Grand Jury Subpoenas (Anderson), 906 F.2d 1485, 1492 (10th Cir. 1990). Therefore, Target should produce its retainer agreement with Farrell & Seldin, but it is not required to provide any other document defining the relationship.

In Interrogatory No. 18, Yazzie requested specific information for each communication that preceded the filing of the lawsuit, including the date of the communication, the form and content of the communication, who initiated the communication and the company for which the person worked at the time, the recipient of the communication and for whom the recipient worked at the time, and if any of the persons involved in the communications are or were employees of Farrell & Seldin, to state that person's job title and supervisor. In response, Farrell & Seldin asserts attorney–client privilege and indicates it would provide a privilege log.

Much of the information sought is not attorney-client privileged at all, but relates to facts. There is no privilege as to facts. Upjohn Co. v. United States, 449 U.S. 383, 395-96 (1981). For example, the date of the communication cannot be claimed as attorney-client privilege nor the form. So, too, the identity of the person who initiated the communication and the person who received it represent facts and not confidential information. Finally, inquiries concerning whether any of the individuals were employees of Farrell & Seldin are facts and not confidential communications.

The Court overrules in part Farrell & Seldin's objection and requires a supplemental response to Interrogatory No. 18(a), 18(b), 18(d), 18(e) and 18(f). To the extent Farrell & Seldin

asserts attorney-client privilege as to the content of the communications in 18(c), it is to provide a privilege log within ten days.

In Interrogatory No. 20, Yazzie requests that Target "identify all other lawsuits and claims to government agencies . . . brought against Target National Bank in the last ten years" where the complainant claimed that he or she was not the debtor on the account at issue. Yazzie requested significant and specific information on this ten-year history.

While prior complaints may be considered in determining willful or reckless conduct, the United States Supreme Court in State Farm Auto Ins. Co. v. Campbell, 538 U.S. 408, 421 (2003), also makes clear that conduct occurring outside of the jurisdiction cannot be considered for this purpose.

Yazzie requests nationwide information. This is the kind of abusive request that resulted in the adoption of the CJRA. The Court will not require information on extra territorial conduct and will specifically limit the time and location to the district of New Mexico for a period of three years prior to the filing of Yazzie's lawsuit.

Accordingly, to the extent any complaints alleging unlawful conduct or a claim that the plaintiff was not the debtor on the account at issue have been filed against Target in state or federal courts in the district of New Mexico for the three years preceding the filing of Yazzie's complaint, Target is required to produce the information requested.

The Court will not require Target to produce complaints, if any, filed with the Federal Trade Commission. Those are public documents and are as readily available to Yazzie as to Target. Yazzie is free to obtain them directly from the Federal Trade Commission.

In Interrogatory No. 23, Yazzie requests the current net worth of Target. While net worth information is relevant on the issue of punitive damages, City of Newport v. Fact Concerts, Inc., 453

U.S. 247, 270 (1981); Ramsey v. Culpepper, 738 F.2d 1092, 1099 (10th Cir. 1984), the Court must be mindful of the balancing factors set out in the introduction to this memorandum. This is the kind of sensitive financial information that the Court eyes with a degree of skepticism. First, financial information on national banks is available through federal regulatory agencies, and Yazzie is free to search for and obtain information generally available to the public.

Second, at the time of the Fed. R. Civ. P. 16 scheduling conference, the Court inquired whether Target had made its initial disclosures pursuant to Fed. R. Civ. P. 26. One of those disclosures is whether there is a policy of insurance to cover the claims asserted. The Court was apprised that there is such a policy.

Third, the allegations in the Complaint simply do not evoke the gross misconduct, willfulness or recklessness that would generally result in any substantial punitive award. To the contrary, the information currently available indicates that a debtor failed to pay her obligations and when efforts to compel compliance failed, the bank referred the account to its attorneys for collection. This is hardly the type of conduct that would justify a finding of willful, wanton or reckless behavior and would warrant an order directing a national bank to provide detailed information on its net worth.

Many state and federal courts hold that production of net worth information, prior to a plaintiff demonstrating a *prima facie* case of liability for punitive damages, is premature. Chenoweth v. Schaaf, 98 F.R.D. 587, 589 (W.D.Pa. 1983); John Does I-VI v. Yogi, 110 F.R.D. 629 (D. D.C. 1986); Rupe v. Fourman, 532 F. Supp. 344, 350-51 (S.D. Ohio 1981). Thus, the Court can withhold the requirement that Target produce information at this juncture.

As previously noted, however, present net worth information is a factor a jury can consider if the issue is presented to them. In this case, the Court determines that Target need not produce

evidence of financial worth, or documents on how it calculated financial worth, at this time. Information on current net worth should be available to be presented at the time of trial, and the trial judge, being in the best position to determine whether Yazzie has made a *prima facie* case of entitlement to punitive damages, can determine whether or not the information should be produced.

Accordingly, the Court denies the request for production to Yazzie, but does require current information on net worth be available for presentment to the trial judge at the time of trial.

## Requests for Production

In Request for Production No. 10, Yazzie requests "[a]ll agreements or other documents that define the relationship between Target National Bank and Farrell & Seldin." Target already advised that its relationship is that of attorney and client.

The Court will not require research and production of all documents relating to the relationship, but, as earlier indicated, will require Target to produce its fee agreement with Farrell & Seldin.

In Request for Production No. 11, Yazzie is asking for documents concerning any communications between Target and Farrell & Seldin regarding the lawsuit. Target appropriately objected on the basis of attorney-client privilege.

The Court will not require production of documents, but will require production of a Vaughn index within ten days.

In Request for Production No. 14, Yazzie requests production of the documents Target "utilized, referred to or consulted" in reference to its net worth figure.

The Court denied the interrogatory requests related to net worth; for the same reason, the Court will not require production of these documents. The Court has ordered, however, that

information on Target's current net worth be available to the trial judge and provided, if required, at the time of trial.

To the extent the Court ordered answers, privilege logs, supplementation or production of documents, they are to be provided within ten days.

IT IS SO ORDERED.

Lorenzo F. Garcia
United States Magistrate Judge