IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LUCINDA M. YAZZIE,

       Plaintiff,

v.                                              No. 10-CV-292 BB/LFG

LAW OFFICES OF FARRELL & SELDIN; and
TARGET NATIONAL BANK,

       Defendant.

## PLAINTIFF'S BRIEF IN OPPOSITION TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (BONA FIDE ERROR)

**I.    Bona Fide Error Provides a Narrow Exception to Strict Liability Under the FDCPA and Farrell & Seldin Bears the Burden of Proof on this Affirmative Defense**

This lawsuit is about the wrongful actions of an attorney debt collection firm and the creditor in whose name it was collecting. As shown by the undisputed facts set forth below, *see infra* § III, Defendant Law Offices of Farrell & Seldin, attorney debt collectors, and Defendant Target National Bank, a creditor, persisted in trying to garnish the wages of Plaintiff Lucinda M. Yazzie despite repeated notice that the debt was owed by someone else with the same name but with a different social security number. In fact, Farrell & Seldin, through its employees, made a conscious choice to switch the social security numbers in its internal system, removing the social security number for the Debtor, which had been provided by Target National Bank, and replacing this number with Plaintiff's social security number. These two persons – Plaintiff and the Debtor – are different and distinct by the social security number and by every other item of identifier information, except name. *Id.*

For three years, Defendants tried to collect from Plaintiff on an account that is not her account. *Id.* These collection efforts include two attempts to garnish Plaintiff's wages. *Id.* After Defendants agreed to release the first garnishment, following receipt of an answer from Plaintiff's employer where the employer indicated that it did not employ the judgment debtor,

Defendants nonetheless filed a second garnishment action against Plaintiff. *Id.* Defendants refused to release the second garnishment until after this lawsuit was filed. *Id.*

In an attempt to escape liability for this outrageous conduct, Farrell & Seldin have asserted the bona fide error defense and asked that the Court grant summary judgment on this defense.[1] *See* Docket No. 7, Answer, Affirmative Defense No. 6; Docket No. 87, Motion for Summary Judgment. The bona fide error defense is a creature of statute. Congress expressly provided for it in the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"):

> A debt collector may not be held liable in any action brought under [the FDCPA] if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).

In the Tenth Circuit, for a debt collector defendant to prevail under the bona fide error defense, the debt collector must show "that the violation was (1) unintentional, (2) a bona fide error, and (3) made despite the maintenance of procedures reasonably adapted to avoid the violation." *Johnson v. Riddle*, 305 F.3d 1107, 1121 (10th Cir. 2002) (quotations omitted) ("*Johnson I*"), *overruled on other grounds by Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, ___ U.S. ___, 130 S.Ct. 1605, 176 L.Ed.2d 519 (2010) (bona fide error defenses do not cover mistakes of law). This three step test for bona fide error is squarely based on the statutory language, *see* 15 U.S.C. § 1692k(c), and is the law across the country. *See e.g. Owen v. I.C. System, Inc.*, ___ F.3d ___, 2011 U.S. App. LEXIS 330 at *16 (11th Cir. Jan. 7, 2011); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 538 F.3d 469, 476-77 (6th Cir. 2008) *overruled on other grounds*, ___ U.S. ___, 130 S.Ct. 1605, 176 L.Ed.2d 519 (2010); *Beck v.*

---

[1] The bona fide error defense in not available to Target National Bank. The bona fide error defense is statutorily provided for by the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"), *see specifically* 15 U.S.C. § 1692k(c), and Plaintiff does not bring a FDCPA claim against Target National Bank, Docket No. 1, Complaint, ¶¶ 51-52, as it is not covered by the Act because it is a creditor. *See McKinney v. Cadleway Properties, Inc.*, 548 F.3d 496, 498 (7th Cir. 2008) ("FDCPA covers debt collectors, not creditors, and these categories are mutually exclusive") (quotations marks and citation omitted). The bona fide error is no defense to the New Mexico consumer protection law claims that Plaintiff asserts against Target National Bank. Docket No. 1, Complaint, ¶¶ 53-58 (claims against both Defendants for violations of the New Mexico Unfair Practice Act, NMSA 1978 §§ 57-12-1 *et seq.* ("UPA") and for tortious debt collection).

*Maximus, Inc.*, 457 F.3d 291, 297-98 (3d Cir. 2006); *Kort v. Diversified Collection Services, Inc.*, 394 F.3d 530, 537 (7th Cir. 2005).

**II.    Plaintiff Disputes Farrell & Seldin's Key Facts**

Plaintiff disputes Facts Nos. 7-14 set forth by Farrell & Seldin. *See* Docket No. 87, pp. 3-4.

In Fact No. 7, Farrell & Seldin states that the social security number switch was made after review of "a computer locator search" – actually the testimony is that it was based on an Accurint report, *see infra* § III, ¶ 4 – "which *apparently* also associated plaintiff's social security number with Target's debtor" (emphasis added). Plaintiff disputes this claimed fact because the report that was used as the basis for the social security number switch has not been produced and, in fact, Farrell & Seldin admits that it was shredded. *See infra* § III, ¶ 7. No one will ever have any idea of whether this report provided any basis for Farrell & Seldin's switch of the social security numbers.

Fact No. 8 – where Farrell & Seldin claims that it was firm policy to never switch social security numbers – is directly disputed by the testimony of the employee that performed the switch. *See infra* § III, ¶¶ 8 and 9. Moreover, this purported policy does not appear in Farrell & Seldin's policy documents. *See id.* at ¶ 10. For these reasons, Plaintiff also disputes the portion of Fact No. 10 that states the social security number switch was "in clear and direct violation of the Law Firms [sic] established policies and procedures," the statement in Fact No. 11 that again claims this ban was "clear policy," and similar statements in Fact No. 12 ("clear violation of a Law Firm policy and procedure") and Fact No. 13 ("unauthorized act in direct violation of processes and procedures").

Although Plaintiff does not necessarily disagree with the sentiment, Plaintiff disputes the portions of Fact No. 9 that pontificate on the importance of social security numbers in distinguishing between persons with other similar identifiers – for example, name – because these statements are not fact, but opinion. Plaintiff does not dispute the last sentence of Fact No. 9 – that Farrell & Seldin's method for verifying a putative debtor's identity is limited to a comparison of this person's social security number with the social security number that Farrell &

Seldin input into its system – but believes that the facts that underlie this lawsuit show how this procedure is wholly inadequate to prevent Farrell & Seldin from persisting in trying to collect from the wrong person. *See infra* § III, ¶¶ 11 ans 34. Plaintiff notes that this last sentence confirms a fact that she has set forth below. *See id.* Farrell & Seldin's Fact No. 10 – except for the claim about what is purportedly the clear policy of the firm – also confirms this same fact set forth below by Plaintiff. *See id.*

Farrell & Seldin's Facts Nos. 11 and 12 are conclusions of law masquerading as facts. Whether the purported firm policy – about which, again, there is conflicting testimony – was adequately designed to prevent the FDCPA violations at issue in this lawsuit (Fact No. 11) and whether the switching of the social security numbers was "unintentional" (Fact No. 12) are prongs of the bona fide error test. *See Johnson I*, 305 F.3d at 1121. These determinations cannot be made on the subjective and self serving musings of Farrell & Seldin but should be made by the jury employing objective standards. *See Johnson II*, 443 F.3d at 729 ("in effect, [the bona fide] component serves to impose an objective standard of reasonableness upon the asserted unintentional violation"). Moreover, as shown below, when an objective standard is employed and the relevant case law is consulted, it is clear that Farrell & Seldin has not proven that its offending actions were in contradiction to procedures adequately designed to prevent these actions, *see infra* § IV(D), nor has it proven that acted unintentionally. *See infra* § IV(B).

Plaintiff disputes Farrell & Seldin's broad brush statement in Fact No. 13 that "[e]xcept for the misidentification" of Plaintiff with the Debtor it complied with the FDCPA. This is akin to stating that Abraham Lincoln enjoyed the play except for the bullet delivered by John Wilkes Booth. Farrell & Seldin's actions violated numerous important FDCPA prohibitions including 15 U.S.C. §§ 1692e, 1692e(10), 1692e(14), 1692f and 1692f(1).

With Fact No. 14, Plaintiff disputes the implication that all that happened with Plaintiff was an initial misidentification that was quickly cleared up when Plaintiff's employer told Farrell & Seldin that it had the wrong person. The truth is that Farrell & Seldin continued to harass Plaintiff in an effort to extract payment from her on a debt that she did not owe for three

4

years, despite repeated notice that it had the wrong person, both from Plaintiff and from her
employer, ending only when Farrell & Seldin was sued in this lawsuit.  *See infra* § III.

## III.   Farrell & Seldin Fails to Recount the Facts that Are Dispositive for Purposes of Bona Fide Error Analysis

The story that Farrell & Seldin tells omits many of the facts that are dispositive to the
bona fide error test.

1.   In December 2006, when the account was transferred to Farrell & Seldin from the
creditor, Target National Bank, Farrell & Seldin electronically received the identifier
information from the account application and it received a hard copy of the application
itself the following month.  Exhibit A, Seldin deposition, 82: 3-25, 83: 1-25, 84:1-11.[2]

2.   Except for the same name as Plaintiff shown on the account application, all identifier
information listed on the application – social security number, address, telephone
number, co-debtor information and employment information – serves to clearly
distinguish the Debtor from Plaintiff.  Exhibit B, application; Exhibit C, Debtor
deposition, 6:6-25, 7:20-25, 8:1-12; Exhibit D, Plaintiff deposition, 4:10-18, 5:10-19,
6:13-17, 9:24-25, 10:1-6.[3]

3.   In December 2006, having determined that the Debtor and Plaintiff were one person
using two social security numbers, a Farrell & Seldin employee removed the Debtor's
social security number from its system and in its place inserted Plaintiff's social security
number.  Exhibit E, Dubus deposition, 26:17-25, 27:1-25, 28:1-3.

4.   The employee claims to have made this determination after he reviewed an Accurint
report.  *Id.* at 28:19-25, 29:1-5, 30:25, 31:1-23.

5.   Accurint makes available reports that list possible identifier information for a given
person, often used for skip tracing purposes, to debt collectors and others.  *Id.* at 33:24-

---

[2] Mr. Seldin testified under Rule 30(b)(6) as the "voice of the corporation."  Exhibit A, Seldin deposition, 7:16-25, 8:1-3.

[3] To protect the privacy of Plaintiff and the Debtor, dates of birth have been redacted as well as all but the last four numbers of social security numbers.

25, 34:1-10; Exhibit F, Johnson deposition, 31:9-13; Docket No. 52, Accurint report (filed under seal).

6.      On these reports, Accurint prints a disclaimer:

> The Public Records and commercially available date sources used in this system have errors. Data is sometimes entered poorly, processed incorrectly and is generally not free from defect. This system should not be relied upon as definitively accurate. Before relying on any data this system supplies, it should be independently verified.

Exhibit E, Dubus deposition, 35:10-25, 36:1-6; Docket No. 52, Accurint report (filed under seal).

7.      Farrell & Seldin has not produced the Accurint report that it obtained in December 2006 and states that this report has been shredded. Exhibit A, Seldin deposition, 56:13-24.

8.      The employee who made the social security number switch testified that he was not aware of any restrictions at Farrell & Seldin on switching social security numbers. He then modified his testimony to state that under Farrell & Seldin's policies social security numbers cannot be switched without approval of a manager. Exhibit E, Dubus deposition, 22:8-17.

9.      This employee also testified that he may have received the approval of a Farrell & Seldin manager before switching from the Debtor's social security number to Plaintiff's social security number. *Id.* at 41:12-18.

10.     The employee who made the social security number switch also testified that he did not know where his knowledge that you do not switch social security numbers came from. *Id.* at 18:22-25, 19:1-16. Farrell & Seldin admits that its purported policy of forbidding social security number switches is an unwritten policy that does not appear in any of its policy documents. Exhibit A, Seldin deposition, 55:21-25, 56:1-6, 60:20-25, 61:1-10.

11.     When identity issues arise, Farrell & Seldin employees cross reference the social security number of the putative debtor with the social security number that appears in Farrell &

Seldin's internal system, which, after the switch, would have been Plaintiff's social security number.  Exhibit G, Gonzales deposition, 51:3-10.

12.    Farrell & Seldin began its collection attempts against Plaintiff in December 2006. Exhibit A, Seldin deposition, 30:20-125, 31:1.

13.    On December 16, 2006, a Farrell & Seldin collector spoke with Plaintiff by telephone. Plaintiff told him that she had never had a Target National Bank account and does not owe any debts.  Exhibit A, Seldin deposition, 32:21-25, 33:1-12; Docket No. 87, Exhibit A, internal notes, entry dated 12/16/06.

14.    However, this collector did not take any action in response to Plaintiff's dispute except to verify that the last four numbers of Plaintiff's social security number matched the social security number listed in Farrell & Seldin's system.  Docket No. 87, Exhibit A, internal notes, entry dated 12/16/06.

15.    In April 2008, Farrell & Seldin filed its first garnishment action against Plaintiff's employer.  On the pleadings, Farrell & Seldin listed the last four numbers of Plaintiff's social security number.  Exhibit G, Johnson deposition, 41:17-25, 42:1-25, 43:1; Docket No. 20, Exhibit B, writ.

16.    Plaintiff's first notice of the debt collection lawsuit was when her employer was served with the first garnishment action.  Exhibit D, Plaintiff deposition, 30:7-20.

17.    After Plaintiff discovered that her employer had been served with the first garnishment action, Plaintiff immediately telephoned Farrell & Seldin and again informed it that it was pursuing the wrong person.  *Id.* at 30:7-25, 31:1-25, 32:1-25, 33:1-25; Exhibit F, Johnson deposition, 44:15-25, 45:1-25, 46:1-17; Docket No. 87, Exhibit A, internal notes, entry dated 4/22/08.

18.    In response to the first garnishment action, Plaintiff's employer filed an answer in which it indicated that it did not employ the judgment debtor.  Exhibit F, Johnson deposition, 52:13-25, 53:1-8; Docket No. 87, Exhibit A, internal notes, entry dated 9/5/08; Docket No. 20, Exhibit D, answer.

7

19.   In December 2008, after review of this answer, Farrell & Seldin released the first garnishment. Exhibit F, Johnson deposition, 53:9-25, 54:1-12; Docket No. 87, Exhibit A, internal notes, entry dated 12/9/08; Docket No. 20, Exhibit E, release.

20.   In August 2009, Farrell & Seldin filed a second garnishment action directed to Plaintiff's employer. On the pleadings, Farrell & Seldin again listed the last four numbers of Plaintiff's social security number. Exhibit G, Gonzales deposition, 103:3-22; Docket No. 87, Exhibit A, internal notes, entry dated 8/11/09; Docket No. 20, Exhibit F, second writ.

21.   In a letter dated September 30, 2009, Plaintiff's employer notified Farrell & Seldin that the second garnishment action did not concern its employee, that Farrell & Seldin had released an earlier garnishment against its employee and that "this is a case of mistaken identity." Docket No. 20, Exhibit G, letter

22.   Farrell & Seldin retained a copy of the September 30 letter in its file. Exhibit A, Seldin deposition, 225:10-25, 226:1-25.

23.   Farrell & Seldin's employee who worked on the second garnishment stated that Farrell & Seldin could have received the September 30 letter in November 2009 and counted it as an "answer" and Farrell & Seldin's internal notes show "wage garn answred" in the context of the second garnishment action, even though no formal answer was ever filed. Exhibit G, Gonzales deposition, 113:5-25, 114:1-25, 115:1-7; Docket No. 87, Exhibit A, internal notes, entry dated 11/18/09.

24.   Farrell & Seldin's Rule 30(b)(6) representative at first stated that Farrell & Seldin had received the September 30 letter but later backtracked and stated Farrell & Seldin may not have received the letter. Exhibit A, Seldin deposition, 225:10-25, 226:1-25, 243:18-25, 244:1-25, 245:1-25, 246:1-25, 247:1-21.

25.   On November 18, 2009, Plaintiff's employer telephoned Farrell & Seldin and told it that it was trying to garnish the wrong person. Exhibit G, Gonzales deposition, 109:21-25, 110:1-25, 111:1; Docket No. 87, Exhibit A, internal notes, entry dated 11/18/09.

26.     In response, the Farrell & Seldin employee that handled this call checked Plaintiff's social security number against the social security number that appeared in Farrell & Seldin's internal system and told Plaintiff's employer that she had verified that Plaintiff was in fact the judgment debtor.  Exhibit G, Gonzales deposition, 110:24-25, 111:1-25, 112:1-25; Docket No. 87, Exhibit A, internal notes, entry dated 11/18/09.

27.     Despite the earlier answer and the telephone call from the Plaintiff's employer, and, if received, the September 30 letter, plus the (at least) two telephone disputes from Plaintiff herself, Farrell & Seldin nonetheless requested that the state court issue a judgment on the second garnishment action.  The judgment that was issued shows the last four numbers of Plaintiff's social security number.  Exhibit G, Gonzales deposition, 118:1-25, 119:1-25, 120:1-25, 121:1-6; Docket No. 87, Exhibit A, internal notes, entry dated 11/18/09; Docket No. 20, Exhibit H, judgment.

28.     On April 1, 2010, Farrell & Seldin first became aware that it had been sued by Plaintiff.  Docket No. 87, Exhibit A, internal notes, entries dated 4/1/10.

29.     That same day, Farrell & Seldin obtained an Accurint report on Plaintiff which is the only Accurint report that Farrell & Seldin has produced.  *Id.*; Docket No. 52, Accurint report (filed under seal).

30.     Farrell & Seldin did not agree to release the garnishment order that it had obtained as a result of the second garnishment action until April 6, 2010.  Docket No. 87, Exhibit A, internal notes, entries dated 4/1/10; Exhibit H, order.

31.     Farrell & Seldin never contacted Target National Bank in response to Plaintiff's and her employer's repeated assertions that Farrell & Seldin was trying to collect from the wrong person.  Exhibit I, Wolf deposition, 33:7-14.[4]

---

[4] Ms. Wolf testified as Target National Bank's Rule 30(b)(6) representative.  Exhibit I, Wolf deposition, 7:22-25, 8:1-7.

32. A former Farrell & Seldin employee that worked on the account at issue testified that "[m]ore follow up should have been done" and, referring to the second garnishment action, stated "by the second time it should have been fixed." Exhibit F, Johnson deposition, 63:15-25, 64:1-17.

33. A Farrell & Seldin collector involved with the account at issue was not aware of any policy against switching social security numbers. Exhibit J, Law deposition, 22:17-25, 23:1-5.

34. This same collector testified that it was her understanding that once she had confirmed that the social security number of the putative debtor matched the social security number shown in Farrell & Seldin's internal system, it became Plaintiff's responsibility to prove that the account was not her account. Id. at 24:20-25, 25:1-25, 26:1-17.

## IV. A Reasonable Jury Could Reasonably Reject Farrell & Seldin's Bona Fide Error Defense

### A. A Bona Fide Error Defense Typically Goes to the Jury

Farrell & Seldin wages an uphill battle in seeking summary judgment under bona fide error. This Court considers the FDCPA a strict liability statute.[5] *Russey v. Rankin*, 911 F.Supp. 1449, 1455 (D. N.M. 1995) ("FDCPA imposes strict liability on the debt collector"). "The FDCPA typically subjects debt collectors to liability even when violations are not knowing or intentional." *Owen*, 2011 U.S. App. LEXIS 330 at *16. *See also Reichert v. National Credit Systems, Inc.*, 531 F.3d 1002, 1004 (9th Cir. 2008) ("A plaintiff need not prove an error was intentional" to establish liability under the FDCPA); *Irwin v. Mascott*, 112 F.Supp.2d 937, 963

---

[5] Several courts, in addition to this Court, have expressly held that the FDCPA confers strict liability. *See Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1175 (9th Cir. 2006) ("[FDCPA's] broad language seems to make the FDCPA a strict liability statute"); *Russel v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d. Cir. 1996) ("Because the [FDCPA] imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages"); *Taylor v. Perrin, Landry, deLaunay and Durand*, 103 F.3d 1232, 1238-39 (5th Cir. 1997); *Shapiro v. Haenn*, 222 F.Supp.2d 29, 43 n. 8 (D. Me. 2002) ("Because the FDCPA is a strict liability statute . . . debt collectors are liable if they perform any intentional act that results in a violation, regardless of fault"), *quoted favorably in, Johnson v. Riddle*, 443 F.3d 723, 728 (10th Cir. 2006) ("*Johnson II*").

(N.D. Cal. 2000) ("proof of intent is not necessary to establish an FDPCA violation"); *Duncan v. Citibank, N.A.*, No. 06-CV-246, 2006 U.S. Dist. LEXIS 95351 at \*12-13 (D. N.M. June 30, 2006) (it would make little sense to read an intent requirement into the FDCPA since the bona fide error defense requires proof of lack of intent). "The FDCPA's bona fide error defense provides a narrow exception to this strict liability." *McCollough v. Johnson, Rodenberg & Lauinger*, 610 F.Supp.2d 1247, 1257 (D. Mont. 2009). *See also Owen*, 2011 U.S. App. LEXIS 330 at \*16 ("FDCPA affords a narrow carve-out to the general rule of strict liability, known as the 'bona fide error' defense"); *Picht v. Jon R. Hawks, Ltd.*, 236 F.3d 446, 451 (8th Cir. 2001) ("The bona fide error defense exists as an exception to the strict liability imposed upon debt collectors by the FDPCA."). "The bona fide error defense is an affirmative defense for which the debt collector has the burden of proof." *McCollough*, 610 F.Supp.2d at 1257. *See also Johnson I*, 305 F.3d at 1121 ("an FDCPA defendant seeking the protection of the bona fide error defense carries the burden of proving" the applicability of the defense). Moreover, in the Tenth Circuit, the FDCPA "should be construed liberally in favor of the consumer." *Johnson I*, 305 F.3d at 1117 *citing* 15 U.S.C. § 1692(e)

The affirmative defense of bona fide error is similar to the common law good faith defense, albeit with much more exacting requirements. For example, it is not enough that a debt collector argue that it did not intend to violate the FDCPA because, under the bona fide error test, "a debt collector's conduct may be intentional even if he lacked the actual knowledge that his conduct violated the FDCPA." *Bassett v. I.C. System, Inc.*, 715 F.Supp.2d 803, 813 (N.D. Ill. 2010) *citing Jerman*, 130 S.Ct. at 1612. Also, a wide range of evidence can serve to debunk a bona fide error defense. *See Johnson v. Riddle*, 443 F.3d 723, 729 (10th Cir.) ("*Johnson II*") (plaintiff can rebut claim of bona fide error "by inferential evidence").

Farrell & Seldin bases its bona fide error defense on its determination that Plaintiff and the Debtor were one person and "that debtor was using 2 social security numbers" *see* Docket

No. 38, Exhibit A, discovery responses (response to Interrogatory No. 16), resulting in the substitution of Debtor's social security number with Plaintiff's social security number in its internal software system.  Docket No. 87, p. 2.  However, the fact that Farrell & Seldin can articulate a purported error does not end the inquiry.  First, for Farrell & Seldin to prevail on its motion for summary judgment it must show that, as a matter of law, its error was the result of unintentional action.  *See Johnson I*, 305 F.3d at 1121; FRCP 56(C) (summary judgment only appropriate where "the moving party is entitled to judgment as a matter of law").  Under the second prong of the test, Farrell & Seldin must show that its claimed error was objectively reasonable.  *See Johnson II*, 443 F.3d at 729 ("in effect, [the bona fide] component serves to impose an objective standard of reasonableness upon the asserted unintentional violation").  Because "whether the debt collector's mistake was bona fide will turn on the debt collector's due diligence practices," *id.* at 729, if the jury could reasonably determine that Farrell & Seldin's due diligence procedures were objectively lacking, then summary judgment on bona fide error should be denied.[6]  Moreover, a debt collector defendant "must establish a bona fide error for each and every alleged violation of the FDCPA,"  *Caputo v. Professional Recovery Services, Inc.*, 261 F.Supp.2d 1249, 1259 (D. Kan. 2003), so Farrell & Seldin must explain not only the circumstances surrounding the initial mixup of the social security numbers – and show how that

---

[6] Summary judgment is only appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(C). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). In making this inquiry, the court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *Velasquez v. Frontier Medical, Inc.*, 375 F.Supp.2d 1253, 1263 (D. N.M. 2005). If the moving party shows that the evidence does not support the non-moving party's contention or argument, the burden shifts to the non-moving party "to present specific, admissible facts from which a rational trier of fact could find for the nonmovant." *Id.* at 262. "An issue of fact is 'genuine' if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the non-moving party." *Trujillo v. Board of Education of the Albuquerque Public Schools*, 410 F.Supp.2d 1033, 1039 (D. N.M. 2005).

mixup can only be seen as objectively reasonable – but also must demonstrate why it was reasonable for it to persist in trying to collect from Plaintiff for three years, including the first garnishment action, and the second, the latter of which occurred after it had received repeated notice from Plaintiff and her employer that it was pursuing the wrong person. Failure to satisfy any one prong of the three prong test means that bona fide error is not available to that defendant, so the third prong – whether adequate policies are in place to prevent the particular error, *see Johnson I*, 305 F.3d at 1121 – is not relevant if the first two prongs of the test are not satisfied. *Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1354 (11th Cir. 2009) ("Because Niagara has failed to meet either of the first two requirements of the bona fide error defense of § 1692k(c), we need not decide whether it also has failed to meet the third one, which requires the maintenance of procedures reasonably designed to avoid the violation of the Act.").

A review of similar lawsuits where the debt collector raised a bona fide error defense is instructive. In *Knighten v. Palisades Collections, LLC*, No. 09-CV-20051, 2010 U.S. Dist. LEXIS 67168 (S.D. Fla. July 6, 2010), the court rejected the debt collector's motion for summary judgment on bona fide error. This lawsuit involved the debt collector's continued pursuit of a state court debt collection lawsuit despite a lack of standing.[7] *Id.* at *2-3. The *Knighten* court found certain facts prevented summary judgment on the bona fide error defense. One fact was "that [Palisades' attorneys] had documents reflecting that Unifund owned the debt" which put Palisades "on notice of the lack of standing." *Id.* at *23. Another fact was the failure of Palisades to conduct a reasonable investigation into the standing issue before it filed the state court lawsuit and, later, when the debtor raised the issue: "[Palisades' attorneys] should have

---

[7] In the state court collection lawsuit, it was "discovered that Palisades did not own the debt at issue, rather an associated company that [Palisades' attorneys] also represented, Unifund, was the true owner of the account." *Knighten*, 2010 U.S. Dist. LEXIS 67168 at *2. Nevertheless, Palisades persisted in prosecuting the lawsuit, which the state court ultimately dismissed because of lack of standing. *Id.* at *2-3.

conducted adequate research to ascertain the correct owner of the account before filing and maintaining the lawsuit." *Id.* at *25-26.

In *Burke v. Messerli & Kramer P.A.*, No. 09-CV-1630, 2010 U.S. Dist. LEXIS 81091 at *2-6 (D. Minn. Aug. 9, 2010), the court considered FDCPA claims against an attorney debt collector who had persisting with collection efforts despite notice from the debtor that she had paid the debt through an earlier settlement with the creditor. The *Burke* court rejected the attorney debt collector's argument that is should be excused from any violation under bona fide error because it did not know about the settlement when it first began its collection efforts, noting that even if this initial mistake were excusable, the attorney's persisting in collection despite mounting evidence that the debt was not valid, without any reasonable follow up investigation, could confer liability.

> [T]he claim is not that Messerli violated § 1692e(2)(A) by representing in the initial demand letter that Burke owed the debt; rather, her claim is that Messerli violated the Act when, after Burke disputed the debt, it continued to represent that Burke owed the debt without verifying the debt.

2010 U.S. Dist. LEXIS 81091 at *23-24. Moreover, the court noted that the attorney debt collectors' failure to check with the creditor in response to the putative debtor's disputes could lead a jury to reject the bona fide error defense.

> Once Burke disputed the debt, the reasonable procedure to avoid this violation would have been for Messerli to verify the nature and status of the debt *before* sending another communication to Burke that expressly stated it was "an attempt to collect a debt." Had Messerli followed the procedure of contacting Capital One to verify the debt, it presumably would have learned that the debt had been resolved.

*Id.* at *24 (emphasis in original).

Another attorney debt collector's motion for summary judgment on bona fide error was rejected by the Montana federal district court in *McCollough*, 610 F.Supp.2d at 1249, a lawsuit involving an attorney debt collector's continued prosecution of a state court debt collection

lawsuit despite the fact that the statute of limitations had run. The *McCollough* court found dispositive the fact that no genuine investigation was undertaken until months after the plaintiff provided notice of the statute of limitations issues and not until the plaintiff obtained a lawyer.

> JRL [the attorney debt collector] did not seek documentation of McCollough's debt until McCollough obtained a lawyer, months after JRL filed suit, months after McCollough asserted the statute of limitations in his answer, weeks after it served discovery on McCollough.

Here, Farrell & Seldin's half hearted responses to Plaintiff and her employer, both of which repeatedly told Farrell & Seldin that it had the wrong person, mimic the half hearted responses of the debt collector defendants in *Knighten*, *Burke* and *McCollough*. Factual issues of intent and reasonableness are inherent to Farrell & Seldin's bona fide error arguments. Summary judgment is not appropriate.

## B. The Jury Could Reasonably Determine that Farrell & Seldin Acted Intentionally

On April 21, 2010, in *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, ___ U.S. ___, 130 S.Ct. 1605, 176 L.Ed.2d 519 (2010), the United States Supreme Court, in only the second FDCPA lawsuit that it has ever decided[8], resolved a circuit split on whether the bona fide error defense can be applied to mistakes of law. The Supreme Court came down on the side of the circuit courts that had limited the bona fide error defense to clerical or factual errors. *Id.* at 1610, 526 *quoting Jerman*, 538 F.3d at 473 ("majority view is that the defense is available for clerical and factual errors only"). The seven member majority held that mistakes of law could never be the basis for a bona fide error defense. *Id.* at 1624, 541 ("We therefore hold that the bona fide error defense in § 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of that statute."). In doing so, the Supreme Court clarified the narrow application of the bona fide error defense, holding that it was

---

[8] In the first FDCPA lawsuit to reach the United States Supreme Court, *Jenkins v. Heintz*, 514 U.S. 291 (1995), the Court held that attorney debt collectors are covered under the FDCPA.

reserved for errors that involve unintentional actions, like the mistranscription of data. Where the claimed error involves an error of judgment – like the mistake of law that the *Jerman* court considered – bona fide error does not apply. *See Owen*, 2011 U.S. App. LEXIS 330 at *21 (interpreting (and quoting) *Jerman*, noting "The Supreme Court contrasted these procedures [procedures that could be covered by bona fide error] with procedures maintained to avoid mistakes in legal reasoning, which 'is not a mechanical or strictly linear process.'").

Accordingly, following *Jerman*, courts have held that where the action that is the basis of the claimed error was the result of a choice or judgment then bona fide error must be rejected as a matter of law. *See Allen v. Checkredi of Kentucky, LLC*, No. 09-CV-103, 2010 U.S. Dist. LEXIS 122301 at *30 (E.D. Ky. Nov. 17, 2010) ("Defendant's act of orally communicating that Plaintiff owed a debt to Plaintiff's father was intentional" and thus bona fide error could not apply); *McNall v. Credit Bureau of Josephine County, Inc.*, No, 07-CV-3075, 2010 U.S. Dist. LEXIS 85619 at *9 (D. Or. Aug. 19, 2010) (bona fide error unavailable where defendant "made a conscious decision not to report Plaintiff's debt as disputed"); *Bassett*, 715 F.Supp.2d at 813 ("Because I.C. System admits that it made thirty-one collection calls, its defense is not based on a clerical or procedural error" and bona fide error does not apply). These recent holdings are hardly radical. They find firm grounding in both the language of the statute – which excludes intentional acts from bona fide error, 15 U.S.C. § 1692k(c) – and in prior Tenth Circuit precedent, which holds the same. *Johnson I*, 305 F.3d at 1121.

Federal courts interpreting *Jerman* have also made explicit what was implicit in the Supreme Court's *Jerman* opinion: "Following *Jerman*, the intentional prong of the bona fide error defense can no longer be whether a defendant specifically intended its actions to violate the FDCPA." *Allen*, 2010 U.S. Dist. LEXIS 122301 at *28-29. *See also Jerman*, 130 S.Ct. at 1611, 176 L.Ed.2d at 527 (rejecting attorney debt collector's argument that "Congress' intent [was] to impose liability only when a party knows it conduct is unlawful"). It is now clear that the

16

intentional/unintentional prong of the bona fide error test requires more than the collector's blithe assertion that he did not intend to violate the FDCPA. Rather, the debt collector must prove that the action itself was unintentional.

Farrell & Seldin, with its bona fide error defense, fails to take into account this change in the law. Farrell & Seldin incorrectly argues that because it purportedly had policies preventing the social security number switch, the act of that switch could not be intentional. Farrell & Seldin's argument is predicated on the assumption that only acts that were intended to violate the FDCPA can be intentional acts under bona fide error analysis. Farrell & Seldin's assumption is wrong after *Jerman*.

Farrell & Seldin's argument that it acted unintentionally is an odd conflation of the third prong of the bona fide error test with a scope of employment defense. It is also entirely conclusory and, for that fact alone, should be rejected. *Reichert*, 531 F.3d at 1007 ("If the bona fide error defense is to have any meaning in the context of a strict liability statute, then a showing of 'procedures reasonably adapted to avoid any such error' must require more than a mere assertion to that effect."). In Farrell & Seldin's own words:

> The Law Firm's pursuit of the plaintiff, in an erroneous effort to collect a debt owed by a different person named Lucinda M. Yazzie, was unintentional. Seldin deposition. The error resulted from Mr. Dubus' clear violation of a Law Firm policy and procedure reasonably designed to avoid such an error. *Id.*

Docket No. 87, p. 4, ¶ 12. Whether the individual collector that replaced the Debtors' social security number with Plaintiff's social security number acted contrary to firm policy is not the issue, either with the intentional/unintentional prong of the bona fide error test or with a properly conceived scope of employment defense.[9] One does not reach the third test of the bona fide

---

[9] Farrell & Seldin's *sub rosa* scope of employment defense fails, at least for summary judgment purposes. The collector who switched the social security numbers testified that Farrell & Seldin's policy was to allow for social security switches when the switch was authorized by a manager. In fact, he testified that he may have been authorized to substitute the Debtor's social security number with Plaintiff's social security number. If the policy is to not allow social security number switches, how can there also be a policy to allow such switches when approved by a manager?

error analysis – whether the debt collector employs policies reasonably designed to catch the particular error at issue – unless the first two tests are met: that the action that resulted in the error was unintentional and that the error was objectively reasonable or bona fide.

Although Farrell & Seldin makes the conclusory claim that the its error was "unintentional" – disguising this legal conclusion as a purportedly undisputed fact – the facts clearly show otherwise. The claimed error at issue here was no transcription error or other mechanical, unthinking error. Rather, if one accepts Farrell & Seldin's story without reservation, Farrell & Seldin, through its collector, exercised judgment by concluding, after reviewing an Accurint report, that the Debtor and Plaintiff were the same person using two social security numbers. Farrell & Seldin, through this same collector, then made a second decision to replace the Debtor's social security number with Plaintiff's social security number in its system. Furthermore, Farrell & Seldin made additional subsequent judgment calls to continue with its collection activities, including the second garnishment action, even in the face of repeated disputes by Plaintiff and her employer. Because the actions on which Farrell & Seldin bases its bona fide error defense plainly involve conscious judgments, these actions cannot give rise to the bona fide error defense.

In short, Farrell & Seldin intended the social security number switch – having made a conscious decision to make the switch – and whether it intended to violate the FDCPA is not material.[10] Moreover, the issue of whether Farrell & Seldin truly had a policy prohibiting social

---

[10] A willful error by a collector's employee of agent – such as the social security number switch here – cannot be said to be unintentional, even if it violates the debt collector's policies. *See Niven v. National Action Financial Services, Inc.*, No. 8:07-CV-1326, 2008 U.S. Dist. LEXIS 69037 at *8-11 (M.D. Fla. Sept. 10, 2008). Where the debt collector claims – like here – that the employee violated company policy, the question then becomes why did the individual collector violate the policies if such policies were actually in place, or, in light of the purported policies, does not the action of the individual collector show the intentional and unreasonable nature of the claimed error? Where the debt collector argues that its policies forbid the specific action of the individual collector, "there is, at least, an issue of fact as to whether [the individual collector's] was unintentional and the result of a bona fide 'error'" leading to "classic issues of fact, inappropriate for resolution of on summary judgment." *Id.* at *10. *See also Worch v. Wolpoff & Abramson LLP*, 477 F.Supp.2d 1015, 1020 (showing of policies to prevent specific error not sufficient; must also show action was unintentional and was, in fact, a bona fide error).

security switches is never reached. *See Edwards*, 584 F.3d at 1354 ("Because Niagara has failed to meet either of the first two requirements of the bona fide error defense of § 1692k(c), we need not decide whether it also has failed to meet the third one, which requires the maintenance of procedures reasonably designed to avoid the violation of the Act.").

### C.   The Jury Could Rightfully Decide that Farrell & Seldin Failed to Act Reasonably

As has been made clear in the Tenth Circuit about the second prong of the bona fide error test, "[the bona fide] component serves to impose an objective standard of reasonableness upon the asserted unintentional violation." *Johnson II*, 443 F.3d at 729. "Bona fide" means that the error resulting in the violation was "made in good faith; a genuine mistake, as opposed to a contrived mistake." *Kort*, 394 F.3d at 538.

#### 1.   Farrell & Seldin Cannot Explain Away Its Ignoring of the Debtor Identifier Information Provided by Target National Bank

As the Eleventh Circuit recently held, "the debt collector has an affirmative statutory obligation to . . . avoid readily discoverable errors." *Owen*, 2011 U.S. App. LEXIS 330 at *33. Thus, bona fide error is not available where the "discernible" information listed "on the face of [the creditor's] documents forwarded to [the debt collector]" would serve to refute the claimed error. *Id.* at *30.

Farrell & Seldin does not even attempt to explain why it was reasonable for it to ignore the Debtor's social security number, address, telephone number, co-debtor information and employment information – all of which was listed on the account application it received from Target National Bank and all of which served to distinguish the Debtor from Plaintiff – when it switched the social security numbers or, even more importantly, when Plaintiff and her employer repeatedly contacted Farrell & Seldin and informed it that it was pursuing the wrong person. Farrell & Seldin has not presented an Accurint report (or any other document) that shows Plaintiff's social security number but lists all of the Debtor's identifier information. The report

that it purportedly obtained at the time of the switch has been shredded.  These facts call into question the reasonableness of the social security number switch.

Moreover, the sole Accurint report that Farrell & Seldin has produced – pulled after Farrell & Seldin discovered that it was being sued – bears a disclaimer in which Accurint states that the data provided cannot be relied upon and that all data "should be independently verified." And no explanation is given for why Farrell & Seldin did not contact Target National Bank in an effort to resolve the identity issue when Plaintiff and her employer contacted Farrell & Seldin, again and again, to tell it that it was dealing with a case of mistaken identity.  These facts, again, render the reasonableness of the social security switch highly suspect.

As was true in *Burke* , 2010 U.S. Dist. LEXIS 81091, Farrell & Seldin's bona fide error defense begs the question as to why it did not take into account the information available to it from the creditor, the most important of which is the application.  Farrell & Seldin has offered no evidence that it ever examined the application and it is undisputed that Farrell & Seldin never contacted Target National Bank in response to the numerous disputes by Plaintiff and her employer.  Because of Farrell & Seldin's intransigence, Plaintiff was forced to obtain an attorney and sue Farrell & Seldin.  Based on this evidence, the jury could reasonably conclude that Farrell & Seldin did not act reasonably when it failed to examine the application at the time of the social security number switch or at any time over the next three years, in response to Plaintiff's and her employer's repeated disputes.

> **2.      Farrell & Seldin Cannot Explain Why it Replaced the Debtor's Social Security Number with Plaintiff's Social Security Number in Its System**

Farrell & Seldin contends that it believed the Debtor and Plaintiff were the same person who was using two social security numbers.  Based on this conclusion, Farrell & Seldin removed the Debtor's social security number from its system – the system that its employees use to crosscheck the account social security number in the event of an identity dispute –so that only

Plaintiff's social security number would be available to its employees. How is this action reasonable? Why wouldn't Farrell & Seldin retain both numbers in its system if it knew, at the very outset, that there was an identity issue and, as it claims, that the Debtor used two social security numbers? Retention of both numbers would be consistent with Farrell & Seldin's purported belief that the Debtor was using two social security numbers. Deletion of one of the social security numbers – as it turned out, the correct one – from the system is not consistent with Farrell & Seldin's purported reason for doing so.

Based on this evidence, the jury could reasonably conclude that Farrell & Seldin's claimed error is not bona fide.

### 3.   The Single "Error" on Which Farrell & Seldin Predicates Its Bona Fide Error Does Not Justify the Second Garnishment

Even if the social security number switch can be passed off as reasonable, and even if this switch provides Farrell & Seldin with an alibi for the first garnishment action, the jury could nonetheless legitimately conclude that Farrell & Seldin was no longer acting reasonably when it pursued the second garnishment action. The evidence supports a conclusion that Farrell & Seldin released the first garnishment in response to an answer served by Plaintiff's employer in which the employer indicated it did not employ the judgment debtor. The evidence could also lead the jury to conclude that Farrell & Seldin nonetheless pursued a second garnishment action, even obtaining a judgment order against Plaintiff in this second action, despite its earlier notice – both from Plaintiff herself and from her employer – that it had the wrong person. These facts provide give the jury a reasonable basis to reject Farrell & Seldin's bona fide error defense, at least as applied to the second garnishment action.

But there is more. There is a question of fact concerning whether Farrell & Seldin received a letter, dated September 30, 2009, that Plaintiff's employer addressed to it in response to the second garnishment action. In this letter, Plaintiff's employer reminded Farrell & Seldin

that Farrell & Seldin had earlier released a garnishment directed to Plaintiff.  In this letter, Plaintiff's employer flatly stated that "this is a case of mistaken identity."

A Farrell & Seldin employee still employed in the Albuquerque office testified that it was possible that the letter had been received prior to Farrell & Seldin's request for a judgment order, recorded in Farrell & Seldin's internal notes as an "answer."  Farrell & Seldin's Rule 30(b)(6) representative, after first admitting that Farrell & Seldin had received the letter, and after admitting that Farrell & Seldin had produced a copy of the letter from its files, later backtracked and questioned whether the letter had ever been received.  Of course, given the state of this evidence, the jury could reasonably conclude that the letter had been received and that Farrell & Seldin is now trying to cover up this very damaging fact.

Similar to the determination of another federal district court in *Knighten*, 2010 U.S. Dist. LEXIS 67168, it is reasonable to conclude that the jury could find that Farrell & Seldin should have undertaken a more thorough investigation before pursuing the second garnishment action. Farrell & Seldin has produced no reports or other documents concerning any investigation undertaken between the first and second garnishment actions and, if it contends that such an investigation was undertaken, it apparently plans to tell the jury that these documents were shredded.  A Farrell & Seldin employee who worked on this account, after reviewing the internal notes, stated that "[m]ore follow up should have been done" and, referring to the second garnishment action, concluded that "by the second time it should have been fixed."  After the evidence is submitted, the jury might agree with this former employee.  In short, the jury – with or without a determination as to whether the September 30 letter had been received – could reasonably conclude that Farrell & Seldin acted unreasonably with the second garnishment, even if they give Farrell & Seldin a pass concerning the first garnishment.

22

### 4. The Single "Error" on Which Farrell & Seldin Predicates Its Bona Fide Error Does Not Justify Its Refusal to Abandon Its Pursuit of Plaintiff's Wages Until After this Lawsuit Was Filed

The jury might also find unreasonable Farrell & Seldin's general nonresponsiveness and the length of time it took to correct the problems that it had caused for Plaintiff. On December 16, 2006, in the course of a collection call placed by Farrell & Seldin, Plaintiff notified Farrell & Seldin that she had never had a Target National Bank account and that she does not owe any debts. In April 2008, as soon as Plaintiff first became aware of the first garnishment – she had not been served with any pleadings before her employer was served in the first garnishment action – she telephoned Farrell & Seldin and explained to an employee that Farrell & Seldin should be looking for a different Lucinda Yazzie. Nevertheless, it was not until more than three years after the first notice that Farrell & Seldin finally gave up the ghost by setting aside the garnishment order that it had obtained as a result of the second garnishment action. In the three years and three months that passed in between, Farrell & Seldin received repeated notice from both Plaintiff and her employer that it was pursuing the wrong person, but Farrell & Seldin closed its eyes and ears and plowed ahead. Farrell & Seldin did not back down until Plaintiff obtained an attorney and filed this lawsuit.

In *McCollough*, 610 F.Supp.2d 1247, the Montana federal district court denied the attorney debt collector's motion for summary judgment on bona fide error because the attorney pressed forward with the debt collection lawsuit, despite notice that the suit should not be maintained, until the consumer obtained an attorney. The same conduct occurred here.

### D. The Jury Could Find that Farrell & Seldin Did Not Maintain Reasonable Procedures

Although not necessary because of Farrell & Seldin's failure to meet the first two prongs of the bona fide error test, for the sake of completeness, Plaintiff also notes that Farrell & Seldin cannot obtain summary judgment on the third prong. The third prong of the bona fide error test

"involves a two-step inquiry," the first of which is "whether the debt collector 'maintained' – *i.e.*, actually employed or implemented – procedures to avoid errors." *Johnson II*, 443 F.3d at 729. *See also Owen*, 2011 U.S. App. LEXIS 330 at *24; *Reichert*, 531 F.3d at 1006. Recently, the Eleventh Circuit noted that this analysis is a "fact intensive inquiry" that cannot typically be resolved via summary judgment. *Owen*, 2011 U.S. App. LEXIS 330 at *25.

Farrell & Seldin has made conclusory claims that switching the social security numbers was a clear violation of company policy, but it has failed to produce any document that set forth this policy. Moreover, the employees that worked on the account at issue – the persons whose testimony is most reliable concerning whether this policy was actually maintained – flip-flopped in deposition on whether such a policy actually exists. *See infra* § III, ¶¶ 8, 9, 10 and 33. There is a clear question of material fact created by this testimony.

## V.    Conclusion

Plaintiff requests that the Court deny Farrell & Seldin's motion for summary judgment.

Respectfully submitted:

TREINEN LAW OFFICE, Attorneys for Plaintiff

_____
ROB TREINEN
500 Tijeras Ave NW
Albuquerque, New Mexico 87102
(505) 247-1980
(505) 843-7129 (fax)

I certify that I served a copy of the foregoing pleading by mailing the same to Jack Brant, attorney for Defendants Law Offices of Farrell & Seldin and Target National Bank, at Law Office of Jack Brant PC, 22 Tulane Dr SE, Albuquerque, New Mexico 87106-1414, on January 18, 2011 (January 17 was a federal holiday).

_____
ROB TREINEN