IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LUCINDA M. YAZZIE,

    Plaintiff,

v.                                                                             No. 10-CV-292 BB/LFG

LAW OFFICES OF FARRELL & SELDIN; and
TARGET NATIONAL BANK,

    Defendant.

## PLAINTIFF'S BRIEF IN OPPOSITION TO
## TARGET NATIONAL BANK'S MOTION FOR SUMMARY JUDGMENT

**I.    Every Wrong Action Taken Against Plaintiff Was Taken in the Name of Target National Bank**

It is undisputed that Plaintiff Lucinda M. Yazzie is not and never was the Debtor that owes on the account at issue in this lawsuit. This account is owned by Defendant Target National Bank. The pleadings from the underlying state court debt collection lawsuit make clear that Target National Bank pursued Plaintiff in a garnishment action, released this first garnishment action after Plaintiff and her employer stated that Plaintiff was not the judgment debtor, then filed a second garnishment action against her, which it refused to release until after this lawsuit was filed.[1] As shown below, *infra* § III, it must be conceded that all these actions were taken in the name of Target National Bank. Target National Bank's name – not the name of Defendant Law Offices of Farrell & Seldin – appears as the plaintiff on each and every one of the pleadings that constitute the wrongful actions taken against Plaintiff. *Id.*

---

[1] These facts are set forth – with citation to the depositions and other sources – in the brief that Plaintiff filed in response to the other pending motion for summary judgment filed by Defendants. *See* Docket No. 94, § III. Plaintiff incorporates these facts and citations into this brief.

## II.  Plaintiff Disputes Target National Bank's Facts

In Target National Bank's purportedly undisputed facts, Target National Bank assumes the legal issue that is central to its motion for summary judgment – and that is stridently contested by Plaintiff – but does not recite the facts necessary to support this legal conclusion. The conclusion that Target National Bank wants this Court to assume is that only Farrell & Seldin is responsible for the wrongful actions directed to Plaintiff.

Target National Bank recites the wrongful actions taken in the underlying state court debt collection lawsuit as actions taken by "the Law Firm," but actually these actions were also undertaken by Target National Bank. All the pleadings bear Target National Bank's name as the plaintiff. *See infra* § III. Farrell & Seldin may have prepared these pleadings, sent them to the Court and served them on Plaintiff's employer, but Target National Bank gave Farrell & Seldin broad authority to do so, allowed it to use its name in doing so, all the while maintaining significant control over Farrell & Seldin concerning how it did so. *See id.*

For these reasons, Plaintiff disputes Target National Bank's reference to 'the Law Firm" as the sole party responsible for the actions listed in Facts Nos. 2, 3, 4, 5, 6 and 7. *See* Docket No. 86, pp. 1-2. This representation is a half truth at best because it omits that all these actions were taken in Target National Bank's name and with its oversight as allowed per its agreement with Farrell & Seldin. *See id.*

Plaintiff also disputes Target National Bank's characterization of its relationship with Farrell & Seldin as "its legal counsel." *See* Docket No. 86, p. 1, ¶ 1. This characterization is made in Target National Bank's Fact No. 1. *Id.* This representation is another half truth.

The relationship between Target National Bank and Farrell & Seldin is a far cry from the traditional attorney/client relationship. Farrell & Seldin also acted as Target National Bank's collection agent. Prior to the filing of the state court debt collection lawsuit, Farrell & Seldin

2

sent out letters about the account and made collection calls to Plaintiff. *See* Docket No. 38, Exhibit E, letter; Docket No. 94, p. 10, ¶ 13. With these actions, Farrell & Seldin acted as a collections agent, not as an attorney. Indeed, in one of the letters, Farrell & Seldin refers to itself as "a debt collector." Docket No. 38, Exhibit E, letter. *See also Burke v. Messerli & Kramer P.A.*, No. 09-CV-1630, 2010 U.S. Dist. LEXIS 58971 at *10-11 (D. Minn. June 15, 2010) (questioning attorney debt collector's assertion of privilege and stating the "contention is unpersuasive because these activities are also consistent with being a collections agent,' specifically citing a letter in which the attorney debt collector referred to itself as a "debt collector").

### III. Target National Bank Ignores Key Facts

Target National Bank attempts to gloss over the facts. Key facts are omitted, including:

1. All the pleadings in the underlying state court collection lawsuit list "Target National Bank" as the plaintiff. Docket No. 20, Exhibit A, default judgment; Docket No. 20, Exhibit B, first garnishment writ; Docket No. 20, Exhibit E, release of first garnishment writ; Docket No. 20, Exhibit F, second garnishment writ; Docket No. 20, Exhibit H, garnishment judgment.

2. In the first application for writ of garnishment, in the second application for writ of garnishment and in the garnishment order that resulted from the second garnishment action, the last four numbers of the social security number for Plaintiff is listed, not the last four numbers of the social security number for the Debtor. Docket No. 20, Exhibit B, first garnishment writ; Docket No. 20, Exhibit F, second garnishment writ; Docket No. 20, Exhibit H, garnishment judgment.

3. Farrell & Seldin did not own the account that it tried to collect from Plaintiff; rather, the account was owned by Target National Bank throughout the time period over which

3

Farrell & Seldin performed activities on the account. Exhibit A, Target National Bank's discovery responses (response to Interrogatory No. 16).

4. During this time, Farrell & Seldin "represent[ed]" Target National Bank due to the fact that Target National Bank retained ownership of the account. Exhibit B, Farrell & Seldin's discovery responses (response to Interrogatory No. 17).

5. The agreement that governs the relationship between Target National Bank and Farrell & Seldin is entitled "Legal Collections Service Agreement." Docket No. 96, Exhibit A, agreement, p. 1 (filed under seal).[2]

6. The agreement mandates that Farrell & Seldin immediately report to Target National Bank whenever Farrell & Seldin files an "earnings withholding order" on a placed account. *Id.* at ¶ 1 (definition of "Important Event").

7. The agreement provides that Farrell & Seldin shall provide "Collections services" on accounts that Target National Bank places with it. *Id.* at ¶ 2.

8. The agreement mandates that in all communications with debtors Farrell & Seldin shall identify that it is collecting for Target National Bank. *Id.* at ¶ 5(a).

9. The agreement provides that all monies collected by Farrell & Seldin on the accounts placed with it by Target National Bank shall be held in trust by Farrell & Seldin for the benefit of Target National Bank. *Id.* at ¶ 5(b).

10. The agreement provides that Farrell & Seldin shall provide reports on the status of the accounts placed with it upon Target National Bank's request. *Id.* at ¶ 5(d).

---

[2] To protect the confidentiality of this agreement, Plaintiff has filed the agreement not as an attached exhibit to this brief but as a separate docket entry so that it can be filed under seal.

4

11. The agreement provides for Target National Bank's review of legal "pleadings and affidavits" prepared by Farrell & Seldin "for verification and authorization" purposes. *Id.* at ¶ 5(j).

12. The agreement confers on Target National Bank the right to recall "in its sole discretion" all accounts placed with Farrell & Seldin. *Id.* at ¶ 8(a).

13. Per the agreement, Farrell & Seldin waived any attorney liens that it otherwise could have placed against Target National Bank. *Id.* at ¶ 12.

14. Per the agreement, Farrell & Seldin warrants that it shall conduct all collections in compliance with the law. *Id.* at ¶ 21(d).

15. Per the agreement, Farrell & Seldin are forbidden from affirmatively adding attorney fees to any accounts placed with it. *Id.* at ¶ 21(e).

16. Per the agreement, Target National Bank has the right to audit Farrell & Seldin, including for "review of Collections efforts and practices" and for "compliance with this Agreement and applicable laws and regulations." *Id.* at ¶ 25.

17. Target National Bank admits that the audit procedures are the mechanism that it has in place for ensuring that collections are being done in a manner acceptable to Target National Bank. Exhibit C, Wolf deposition, 24:19-22.[3]

18. Target National Bank admits that it has never audited Farrell & Seldin regarding the account at issue in this lawsuit. *Id.* at 25:5-7.

19. Target National Bank testified that it doesn't know whether Farrell & Seldin breached the agreement between Target National Bank and Farrell & Seldin. *Id.* at 27:11-16.

---

[3] Ms. Wolf testified as Target National Bank's Rule 30(b)(6) representative. Exhibit C, Wolf deposition, 7:22-25, 8:1-7.

20. Plaintiff testified that she telephoned Target National Bank and asked what she could do to stop the collection attempts directed at her on a Target National Bank account in the name of someone with the same name as her name. She asked if she could obtain information from Target National Bank that would allow her to prove that she was not the debtor on the account. She was told that when an account is transferred to collection, Target National Bank doesn't "have a record of it" because "its taken out of the system." Target National Bank offered her no help. Exhibit D, Plaintiff deposition, 38:4-25, 39:1-25, 40:1-7.

21. Target National Bank testified that if a debtor called it about an account that had been placed with Farrell & Seldin, the debtor would be referred to Farrell & Seldin. Exhibit C, Wolf deposition, 30:10-19.

22. Target National Bank admitted that if someone called it about an account where that person was not the debtor – like Plaintiff's call – Target National Bank would not make any notation regarding that call. *Id.* at 30:20-25, 31:1-8.

IV. **It Is for the Jury to Determine Whether Target National Bank Can Be Held Liable Under the Tort Theories Alleged by Plaintiff**

    A. **New Mexico Tort Law Allows for Creditor Liability Where the Collection Efforts Undertaken in the Name of the Creditor Were Unreasonable**

Plaintiff brings two claims against Target National Bank. The first claim is for violations of the New Mexico Unfair Practices Act, NMSA 1978 §§ 57-12-1 *et seq.* ("UPA"). Docket No. 1, complaint, ¶¶ 53-56. The second claim is for tortious debt collection. *Id.* at ¶¶ 57-58. As explained below, both claims allow for creditor liability.

Plaintiff does not bring a claim against Target National Bank for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). The fact that this claim

runs only against Farrell & Seldin is clear from the complaint. *Id.* at ¶¶ 51-52. Plaintiff did not bring an FDCPA claim against Target National Bank because creditors are not covered by the Act. *See Stafford v. Cross Country Bank*, 262 F.Supp.2d 776, 794 (W.D. Ky.) (it is "well-settled" that "a creditor is not a debt collector for the purposes of the FDCPA and creditors are not subject to the FDCPA"). With the FDCPA, Congress intended a binary construction concerning who would be covered. *Schlosser v. Fairbanks Capital Corporation*, 323 F.3d 534, 536 (7th Cir. 2003) ("these two categories – debt collectors and creditors – are mutually exclusive"); *Johnson v. Americredit Financial Services, Inc.*, No. 3:08-0405, 2009 U.S. Dist. LEXIS 82156 at *17 (M.D. Tenn. Sept. 8, 2009) ("the terms are mutually exclusive and one is either a 'debt collector' or a 'creditor' for purposes of a particular transaction"). "Creditors" and "debt collectors" are defined in contradistinction to each other with creditors exempt from the Act. *Compare* 15 U.S.C. § 1692a(4) *and* 15 U.S.C. § 1692a(6).

However, under well established FDCPA case law, where the entity for which an attorney is collecting is itself a debt collector, that entity is liable for the collection actions of its attorney as if the actions were undertaken directly by it. In *Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507 (9th Cir. 1994), the Ninth Circuit held that the debt collector whose attorney filed in the wrong venue could be liable for this FDCPA violation. In the debt collection context, "the actions of an attorney [are] to be imputed to the client on whose behalf they are taken." *Id.* at 1516. *See also Newman v. Checkrite California, Inc.*, 912 F.Supp. 1354, 1370 (E.D. Cal. 1995) ("a debt collector may be found vicariously liable for the conduct of its attorney"). This rule has long been the law in this District. *Martinez v. Albuquerque Collection Services*, 867 F.Supp. 1495, 1502 (D. N.M. 1994) ("Debt collectors employing attorneys or other agents to carry out

7

debt collection practices that violate the FDCPA are vicariously liable for their agent's conduct.").

Thus, the only fact that prevents Target National Bank from being liable under the FDCPA for Farrell & Seldin's actions is the fact that Target National Bank is a creditor. The fact that another entity, a law firm, acted for Target National Bank would nonetheless confer liability on Target National Bank under the FDCPA but for Target National Bank's status as a creditor.

When one moves from FDCPA liability to tort liability, the creditor exclusion evaporates and Target National Bank has no escape from liability. In *Lindor v. Pallisades Collection, LLC*, 2010 NY Slip Op 20517, 2010 N.Y. Misc. LEXIS 6130 at *3-*5, the court considered state law claims brought against both the debt collector and the creditor – AT&T Wireless – involving an earlier lawsuit they had filed against the wrong person due to the similarity of that person's name and the true debtor's name. The court held:

> Defendants owe a duty to take reasonable steps in performing their work, and to take reasonable steps to ensure that they do not link a debt to the wrong party. Whether in this case AT&T and Palisades were negligent in attaching Plaintiff's address to the judgment against [the true debtor] is a separate question, and one for the jury to decide.

*Id.* at *16-*17.

The flagship opinion that established the New Mexico common law cause of action for tortious debt collection makes clear that creditors are covered under New Mexico tort law for the actions of their attorneys in debt collection lawsuits.[4] In *Montgomery Ward v. Larragoite*, 81

---

[4] Plaintiff's claim for tortious debt collection has been expressly recognized by this District under facts very similar to the facts here. *See Billsie v. Brooksbank*, 525 F.Supp.2d 1290, 1297 (D. N.M. 2007) (wrongful garnishment subjects the actor to potential liability for tortious debt collection).

N.M. 383, 384-85, 467 P.2d 399, 400-01 (N.M. 1970), the brother of the plaintiff applied for a department store credit card in the name of the plaintiff and, after the brother failed to pay, Montgomery Ward tried to collect from both the brother and the plaintiff. Montgomery Ward's efforts culminated in a lawsuit that its attorneys filed against both the brother and the plaintiff, with the plaintiff being served at work, to his great embarrassment. *Id.* at 385, 401. The brother filed counterclaims. *Id.* Thus, at issue were the actions of the creditor taken through its attorneys via a debt collection lawsuit.

After a jury awarded damages to the plaintiff, Montgomery Ward appealed. *Id.* at 384, 400. The New Mexico Supreme Court found no problem with holding Montgomery Ward liable under such facts.[5]

The UPA sounds in tort. *Guidance Endodontics, LLC v. Dentsply International, Inc.*, 708 F.Supp.2d 1209, 1224 (D. N.M. 2010) ("UPA should generally be treated like a tort claim").

---

[5] The New Mexico Supreme Court in *Montgomery Ward v. Larragoite* affirmed the jury's award of damages, although the damages were remitted to a smaller amount, based on a conclusion that Montgomery Ward had "knowingly and intentionally" pursued a person that did not owe the debt. *Id.* at 385, 401. However, the damages being considered were in the nature of punitive damages. The plaintiff had brought counterclaims that Montgomery Ward's collection tactics were "wantonly, wilfully and maliciously performed." *Id.* These levels of *mens rea* are the triggers for punitive damages under New Mexico law. *Akins v. United Steel Workers of America, AFL-CIO, CLC, Local 187*, 237 P.3d 744, 752 (N.M. 2010) ("punitive damages should be available as long as the wrongdoer's conduct is willful, wanton, malicious, reckless, fraudulent or in bad faith"). Thus, *Montgomery Ward v. Larragoite* does not require a showing of knowing and intentional action for all damages under tortious debt collection, but only for damages that are in the nature of punitive damages. Under other theories of tort, New Mexico law allows for damages upon a showing of failure to exercise ordinary care.
> [F]raudulent misrepresentation requires the defendant to make a statement recklessly or with knowledge that it is false, while negligent misrepresentation only requires a failure to exercise ordinary care in obtaining or communicating the statement.

*Eckhardt v. Charter Hospital of Albuquerque*, 1998 NMCA 17, 55, 124 N.M. 549, 562, 953 P.2d 722, 735 (N.M. Ct. App. 1997). In any event, under the tortious debt collection doctrine set forth in *Montgomery Ward v. Larragoite*, the creditor is responsible for the actions of its attorneys. Here, the jury could clearly find that Farrell & Seldin acted wantonly, wilfully or maliciously. Thus, Plaintiff need not show that Target National Bank acted wantonly, wilfully or maliciously to obtain actual damages from it under the tortious debt collection claim.

There is nothing in the UPA to suggest that creditors would be exempt from liability and, in fact, the provisions of the UPA compel the opposite conclusion. The UPA expressly covers debt collection. NMSA 1978 § 57-12-2(D) (UPA covers any misrepresentation made "in connection with . . . the collection of debts"). There is no restriction on the type of entities that can be found liable under the UPA. *See* NMSA 1978 § 57-12-2.

Target National Bank argues that it did not make a misrepresentation to Plaintiff, so Plaintiff's UPA claim against it cannot stand. Docket No. 86, p. 4. However, in the garnishment pleadings, all of which constitute representations by Target National Bank, it misrepresented that Plaintiff and the Debtor were the same person, going so far as to substitute Plaintiff's social security number for the Debtors' on the pleadings. These representations are clearly actionable misrepresentations under the UPA.

A defendant violates the UPA by making a representation that meets any one of the nonexclusive 17 enumerated unfair practices listed under NMSA 1978 § 57-12-2(D) that are *per se* violations of the UPA. The list includes "using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive." NMSA 1978 § 57-12-2(D)(14). *See also Smoot v. Physicians Life Insurance Company*, 2004 NMCA 27, 15, 135 N.M. 265, 269, 87 P.3d 545, 549 (N.M. Ct. App. 2003) ("The UPA . . . imposes a duty to disclose material facts reasonably necessary to prevent any statements from being misleading"). The list also includes "stating that a transaction involves rights, remedies or obligations that it does not involve." NMSA 1978 § 57-12-2(D)(15).

The misrepresentation need not be directly made but can be made through another. In *Lohman v. Daimler-Chrysler Corporation*, 2007 NMCA 100, 26, 142 N.M. 437, 443, 166 P.3d

1091, 1097 (N.M. Ct. App. 2007) *cert. denied* 142 N.M. 434, 166 P.3d 1088 (N.M. 2007), the New Mexico Court of Appeals held that the UPA covers misleading representations "made by and between third parties in the course of commercial transactions," particularly where the misrepresentation ultimately adversely impacts a consumer.

Not only is privity or a direct misrepresentation to the plaintiff not required, a showing of reliance on behalf of the plaintiff is not required. "A claimant under the UPA need not allege detrimental reliance on the deceptive practice in order to state a valid claim." *Mulford v. Altria Group, Inc.*, 242 F.R.D. 615, 621 (D. N.M. 2007). *See also Lohman*, 2007 NMCA at 35, 142 N.M. at 444, 166 P.3d at 1098 (to prosecute a successful UPA claim, "a claimant need not prove reliance upon a defendant's deceptive conduct"). "[T]he UPA does not require that the defendant's conduct actually deceive a consumer; it permits recovery even if the conduct only 'tends to deceive.'" *Smoot*, 2004 NMCA at 21, 135 N.M. at 270, 87 P.3d at 550 . Here, Plaintiff need only show that the misrepresentation that she is the Debtor – accomplished through the garnishment pleadings filed in Target National Bank's name that list the last four numbers of her social security number – "may, tends or does deceive or mislead any person." NMSA 1978 § 57-12-2(D).

The misrepresentation does not have to be intentional. In *Ashlock v. Sunwest Bank of Roswell*, 107 N.M. 100, 753 P.2d 346 (N.M. 1988), the New Mexico Supreme Court rejected the argument that an intent requirement should be read into the UPA.

> Such an interpretation imposes an element not provided for by the legislature. Had the legislature wished intent to deceive to be an essential element of the offense, it would have so specified.

11

*Id.* at 101, 347. Rather than intentional conduct, knowing conduct is sufficient for UPA liability. The "knowingly" standard under the UPA does not require a plaintiff to show actual knowledge of falsity.

> The "knowingly made" requirement is met if a party was actually aware that the statement was false or misleading when made, or in the exercise of reasonable diligence should have been aware that the statement was false or misleading.

*Russey v. Rankin*, 911 F.Supp. 1449, 1460 (D. N.M. 1995) *quoting Stevenson v. Louis Dreyfus Corporation*, 112 N.M. 97, 100, 811 P.2d 1308, 1311 (N.M. 1991). Failure to exercise reasonable diligence constitutes knowing conduct under the UPA, even where the misrepresentation is made through another. *Pedroza v Lomas Auto Mall, Inc.*, 600 F.Supp.2d 1200 (D. N.M. 2009) *reconsideration denied* 258 F.R.D. 453 (D. N.M. 2009).

Moreover, the UPA is to be liberally interpreted to accomplish its consumer protection purpose and intent. *State ex re. Stratton v. Gurley Motor Company*, 105 N.M. 803, 808, 737 P.2d 1180, 1185 (N.M. Ct. App. 1987). The New Mexico Supreme Court explained that this liberal interpretation is to be accorded in order to offer broad protection to consumers.

> By recognizing that the Act applies to all misleading or deceptive statements, whether intentionally or unintentionally made, we ensure that the Unfair Practices Act lends the protection of its broad application to innocent consumers.

*Ashlock*, 107 N.M. at 201, 753 P.2d at 34. *See also Lohman*, 2007 NMCA at 25, 142 N.M. at 442-43, 166 P.3d at 1096-97 ("The remedial purpose of the legislation, as a consumer protection measure, is also consistent with the broadest possible application.").

New Mexico common law and statutory consumer protection law confers liability on creditors that engage in unreasonable collection tactics, even if the creditors' attorneys perform the violative action. This path to creditor liability is separate and apart from liability conferred

by agency law. Yet, as shown below, *infra* § IV(B), agency theory also confers liability on Target National Bank.

### B. Target National Bank Is Liable for the Actions of Its Agent, Farrell & Seldin

It is long been the law that a principal is liable for the actions of the agent provided the agent does not exceed its conferred authority to act on the principal's behalf. *See Truscon Steel Company v. Cooke*, 98 F.2d 905, 909 (10th Cir. 1938). Target National Bank has advanced no claim and has produced no evidence that Farrell & Seldin exceeded its conferred authority. Nor could it given the evidence.

New Mexico recognizes that the attorney client relationship is one of principal and agent.[6]

> Plaintiff's attorney is an agent of the Plaintiffs. The clients are principals, the attorney is an agent, and under the law of agency the principal is bound by his chosen agent's deeds.

*Marchman v. NCNB Texas National Bank*, 120 N.M. 74, 92, 898 P.2d 709, 727 (N.M. 1995) (citations and quotation marks omitted). This definition of the attorney client relationship is the general rule in New Mexico and has been applied to hold the client accountable for the attorney's actions in the course of litigation. *See Resolution Trust Corporation v. Ferri*, 120 N.M. 320, 325, 901 P.2d 738, 743 (N.M. 1995) ("all parties are deemed bound by the acts and failures of their attorneys"); *Santa Fe Pacific Gold Corporation v. United Nuclear Corporation*, 2007 NMCA 133, 36, 43 N.M. 215, 227-28, 175 P.3d 309, 321-22 (N.M. Ct. App. 2007)

---

[6] New Mexico law on the attorney client relationship is dispositive here. Federal courts "may not disregard a state court's interpretation of state law" concerning the legal implications of the "attorney-client relationship." *Moran v. Burbine*, 475 U.S. 412, 429 n.3 (1986). *Cf. Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1371 (10th Cir. 1997) (Tenth Circuit must "consider the Kansas law on the attorney-client privilege since [plaintiff] asserts both federal claims and Kansas pendent state law claims").

(attorney can waive privilege even where client holds privilege because attorney acts for client).

Even if New Mexico did not recognize the attorney client relationship as one of principal and agent, New Mexico agency law makes clear that Farrell & Seldin acted as Target National Bank's agent under the facts present in this lawsuit.

> An agency may be created by active consent of the principal and agent, by operation of law, by estoppel, or by ratification. There is no particular by which an agency must be established . . ..

*Kennedy v. Justus*, 64 N.M. 131, 134, 325 P.2d 716, 718 (N.M. 1958).[7]

Target National Bank gave Farrell & Seldin broad authority to conduct debt collection in its name. Per Target National Bank's agreement with Farrell & Seldin, it allowed Farrell & Seldin to conduct every species of debt collection, including the filing and maintenance of debt collection lawsuits, all while using its name. Such authority necessarily encompasses determining and resolving issues of identify as to who owes on the account. "Most authority is created by implication" rather than by a minute spelling out of all possible permutations of the authority conferred. *Cooper v. Albuquerque National Bank*, 75 N.M. 295, 302, 404 P.2d 125, 130 (N.M. 1965). "Unless otherwise agreed, authority to conduct a transaction includes authority to do acts that are incidental to it, usually accompany it, or are reasonably necessary to accomplish it." *Id.*

Target National Bank provided itself with oversight powers concerning the actions that it authorized Farrell & Seldin to perform on its behalf. "An agent is one authorized by another to

---

[7] Issues of agency are traditionally determined by reference to state law. *See Reo v. United States Postal Service*, 98 F.3d 73, 77 (3d Cir. 1996 ) (noting "the traditional state-law domain of contract, agency, and family law").

act on his behalf and under his control." *Hydro Resources Corporation v. Gray*, 2007 NMSC 61, 39, 143 N.M. 142, 153, 173 P.3d 749, 760 (N.M. 2007). The agreement between Target National Bank and Farrell & Seldin mandates that Farrell & Seldin immediately report to Target National Bank whenever Farrell & Seldin files an "earnings withholding order" – *i.e.*, a garnishment order – with a placed account. The agreement provides for Target National Bank's review of legal "pleadings and affidavits" prepared by Farrell & Seldin "for verification and authorization" purposes. Target National Bank retained the right to audit Farrell & Seldin on its debt collection practices and on its compliance with the law. Target National Bank also had the ability to recall "in its sole discretion" all accounts placed with Farrell & Seldin.

Target National Bank controlled Farrell & Seldin in other ways as well. It retained ownership of all accounts placed with Farrell & Seldin. It only allowed Farrell & Seldin to "represent" it in the litigation activities. Per the agreement, Farrell & Seldin waived any attorney liens that it otherwise could have placed against Target National Bank. Farrell & Seldin were also forbidden from affirmatively adding attorney fees to any accounts. The monies collected by Farrell & Seldin were held in trust for Target National Bank.

The fact that Target National Bank failed to invoke its oversight power with the account at issue does not allow it to escape liability, but rather reinforces liability. Target National Bank's acquiescence amounts to ratification. "An agency may be created . . . by ratification." *Kennedy*, 64 N.M. at 134, 325 P.2d at 718. Ratification provides for liability even if the action ratified was an unauthorized action. "The ratification by the principal of an unauthorized act of his agent is equivalent to an original grant of authority." *Grandi v. La Sage*, 74 N.M. 799, 810, 399 P.2d 285, 293 (N.M. 1965).

Here, Target National Bank testified that it doesn't know if Farrell & Seldin breached the agreement, which includes a warrant on behalf of Farrell & Seldin that it will comply with all applicable laws. Target National Bank admits it has never audited Farrell & Seldin regarding the account at issue despite admitting that its audit procedures are what it uses to ensure that Farrell & Seldin are collecting in a manner acceptable to it. And when Plaintiff telephoned Target National Bank and asked what she could do to stop the collection attempts against her, Target National Bank offered no help at all. Under these facts, the jury could reasonably conclude that Target National Bank ratified Farrell & Seldin's wrongful pursuit of Plaintiff.

Even if the jury found that Target National Bank had not conferred authority to Farrell & Seldin to act in its name, while reserving sufficient right to control Farrell & Seldin, the jury could nonetheless find Target National Bank liable for the acts of Farrell & Seldin under an apparent authority theory. The doctrine of apparent agency was recognized in New Mexico shortly after New Mexico became a state.

> While as between the principal and the agent the scope of the latter's authority is that authority which is actually conferred upon him by his principal, which may be limited by secret instructions and restrictions, such instructions and restrictions do not affect third persons ignorant thereof, and as between the principal and third persons the mutual rights and liabilities are governed by the apparent scope of the agent's authority, which is that authority that the principal has held the agent out as possessing, or which he has permitted the agent to represent that he possessed, and which the principal is estopped to deny.

*New Mexico-Colorado Coal & Mining Company v. Baker*, 21 N.M. 531, 537, 157, 169 P. 167, (N.M. 1916). Here, all actions undertaken in the debt collection lawsuit were in the name of Target National Bank. Plaintiff had no reason to doubt that these actions were taken with Target National Bank's authority or permission. She was not told Farrell & Seldin was acting out of

16

bounds when she telephoned Target National Bank in an attempt to put a stop to Farrell & Seldin's wrongful actions.

Target National Bank is liable for the acts of Farrell & Seldin, who acted on its behalf and in its name with each and every wrongful action taken. Target National Bank reserved sufficient control over Farrell & Seldin but refused to exercise this control, even after being put on notice of Farrell & Seldin's wrongful acts, thus ratifying Farrell & Seldin's wrongful attempts to extract payment from Plaintiff. At the very minimum, questions of fact exist as to whether an agency relationship exits, thus making summary judgment inappropriate. *See Miller v. Midland Funding LLC*, No. 07-CV-4869, 2008 U.S. Dist. LEXIS 97229 at *3 (C.D. Cal. Nov. 20, 2008) ("The question of whether Defendant Midland Funding should be held vicariously liable for the acts of Eskanos & Adler will be a question for the jury.").

### C. Target National Bank's Independent Contractor Argument Does Not Allow It to Escape Liability

Target National Bank – without support – argues that its relationship with Farrell & Seldin is that of an employer and independent contractor. Docket No. 86, p. 5. Target National Bank then incorrectly concludes that it cannot be liable for Farrell & Seldin's actions. *Id.* In another lawsuit concerning unlawful debt collection practices, *Newman*, 912 F.Supp. 1354, a federal district court rejected this same argument.[8]

---

[8] Although it does not matter if Farrell & Seldin can truly be considered an independent contractor – New Mexico law allows that an entity can be an independent contractor *and* an agent, *Harger v. Structural Services, Inc.*, 121 N.M. 657, 664, 916 P.2d 1324, 1331 (N.M. 1996) *quoting* Restatement (Second) of Agency § 2 (independent contractor "may or may not be an agent") – it is worth noting the Target National Bank's declaration that Farrell & Seldin is an independent contractor, in the agreement between them or otherwise, does not carry the day on the question of whether Farrell & Seldin is an independent contractor under the law. *Blea v. Fields*, 2005 NMSC 29, 138 N.M. 348, 120 P.3d 430 (N.M. 2005) ("How an employment contract defines the status of an individual, while relevant and material, does not answer whether an individual is . . . an independent contractor."). As stated in an

> The fact that an attorney may act as an independent contractor does not require a different result. Under general rules of agency, one who contracts to act on behalf of another and is subject to the other's control, may be both an agent and an independent contractor. . . . It has generally been said that an attorney is an agent even if employed for a single transaction and as an independent contractor.

*Id.* at 1370. This rule – that an independent contractor can also be an agent – is the law in New Mexico. *Harger v. Structural Services, Inc.*, 121 N.M. 657, 664, 916 P.2d 1324, 1331 (N.M. 1996) *quoting* Restatement (Second) of Agency § 2 (independent contractor "may or may not be an agent").

Because, in *Newman*, the agreement between the entity that owned the right to collect on the debts and the attorneys that collected for it specified that the attorneys were authorized to collect for the entity and to file lawsuits in its name "[t][he law firms were thus acting on behalf and under the authority of [the entity that owns the right to collect on the debts] and were not only independent contractors, but . . . agents as well."[9] *Id.* The same is true here.

## VI. Conclusion

Plaintiff requests that the Court deny Target National Bank's motion for summary judgment.

---

opinion arising from another lawsuit alleging unlawful debt collection practices:
> Although the employment agreement between MSF and the individual collectors refers to the latter as 'independent contractors,' the key consideration in determining the existence of a master-servant relationship is the alleged master's power of control of the alleged servant's actions.

*West v. Costen*, 558 F.Supp. 564, 573 n.2 (W.D. Va. 1983).

[9] Although the *Newman* court does not cite to New Mexico agency law, it cites to general agency law as reflected in the Restatement of Agency, 912 F.Supp. at 1370, which is also considered authoritative in New Mexico. *See e.g. Harger*, 121 N.M. 657, 664, 916 P.2d 1324, 1331 (N.M. 1996) ("In defining the term 'independent contractor,' we adopt the approach taken in Restatement (Second) of Agency Section 220").

Respectfully submitted:

TREINEN LAW OFFICE, Attorneys for Plaintiff

_____
ROB TREINEN
500 Tijeras Ave NW
Albuquerque, New Mexico 87102
(505) 247-1980
(505) 843-7129 (fax)

I certify that I served a copy of the foregoing pleading by mailing the same to Jack Brant, attorney for Defendants Law Offices of Farrell & Seldin and Target National Bank, at Law Office of Jack Brant PC, 22 Tulane Dr SE, Albuquerque, New Mexico 87106-1414, on January 18, 2011 (January 17 was a federal holiday).

_____
ROB TREINEN