IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LUCINDA M. YAZZIE,

       Plaintiff,

v.                                        No. 10-CV-292 BB/LFG

LAW OFFICES OF FARRELL & SELDIN; and
TARGET NATIONAL BANK,

       Defendant.

**PLAINTIFF'S TRIAL BRIEF**

**I.**    **Farrell & Seldin Would Not Stop Pursuing Plaintiff for a Debt that She Did Not Owe, Despite Mounting Evidence that It Was Pursuing the Wrong Person**

As shown by the undisputed facts, set out in the Court's denial of the motion for summary judgment filed by Defendant Law Offices of Farrell & Seldin, Farrell & Seldin, for three years, persisted in trying to collect from Plaintiff Lucinda M. Yazzie, including two attempts to garnish her wages, despite repeated notice that the debt was owed by someone else. *See* Docket No. 121, Opinion (filed 5/26/11), pp. 1-3. Some of the strongest evidence in support of these facts is Farrell & Seldin's own collection notes. *See* Docket No. 87, Exhibit A, collection notes. These notes show that as far back as 2006, Plaintiff told Farrell & Seldin that she is not the debtor and that she had never had a Target National Bank credit card. *Id.*, entry dated 12/16/06. Additional notice that Plaintiff was not the debtor was delivered repeatedly to Farrell & Seldin over the next three years, both from Plaintiff and from her employer, and, for the most part, is recounted in Farrell & Seldin's collection notes. *Id.*, entry dated 4/22/08; entry dated 11/7/08; entry dated 11/18/09. *See also* Docket No. 20, Exhibit C, notes; Docket No. 20, Exhibit G, letter; Docket No. 20, Exhibit I, letter. Perhaps most significantly for purposes of this trial, Farrell & Seldin

withdrew its first attempt to garnish Plaintiff's wages after receipt of an answer from Plaintiff's employer in which the employer indicated that it did not employ the debtor, but then inexplicably turned around and filed a second garnishment action against Plaintiff's employer. Docket No. 20, Exhibit D, answer; Docket No. 20, Exhibit E, release; Docket No. 20, Exhibit F, second writ. Farrell & Seldin did not stop its wrongful pursuit of Plaintiff until she obtained an attorney and filed this lawsuit in March 2010. Docket No. 87, Exhibit A, collection notes; Docket No. 1, Complaint (filed 3/29/10).

### A.   Intent Can Be Inferred From Farrell & Seldin's Actions

Any effort by Defendants to argue that these actions cannot lead to a reasonable inference of intent must fail as a matter of law. "Intent may be inferred by evidence that the debt collector continued to call the debtor after the debtor asked not to be called and had repeatedly refused to pay the alleged debt." *Brandt v. I.C. System, Inc.*, No. 8:09-CV-126, 2010 U.S. Dist. LEXIS 14588 at *5 (M.D. Fla. Feb. 19, 2010). "Plaintiff asserts further that she asked defendant to stop contacting her but defendant refused to do so. The law is clear that under such circumstances I may infer that the calls were made with the intent to harass or annoy." *Shand-Pistilli v. Professional Account Services, Inc.*, No. 10-CV-1808, 2010 U.S. Dist. LEXIS 75056 at *12 (E.D. Pa. July 26, 2010). "Intent to annoy, abuse, or harass may be inferred from . . . the place to which the phone calls are made." *Kerwin v. Remittance Acceptance Corporation*, 559 F.Supp.2d 1117, 1124 (D. Nev. 2008). Here, the places to which Farrell & Seldin placed telephone calls and directed the garnishment actions were the wrong places – Plaintiff's home and employer, even though she was not the debtor – yet Farrell & Seldin persisted until sued.

2

## B.  Intent Can Be Inferred From Farrell & Seldin's Business Model

Farrell & Seldin engages in a high volume debt collection practice that takes a factory approach to litigation, employing abbreviated procedures for the filing of lawsuits and the obtainment of default judgments with as little expenditure as possible.  For the last twenty years, courts have been forced to grapple with high volume attorney debt collector operations like Farrell & Seldin as they wreak havoc on consumers' lives through their factory approach.  *See* Caroline E. Mayer, *As Debt Collectors Multiply, So Do Consumer Complaints*, Washington Post, July 28, 2005, *available at* http://creditreportproblems.net/Washington_Post_Article.pdf ("growing from about a dozen firms in 1996 to more than 500 today . . . consumer debt-buying industry began in earnest in the early 1990s"); *Debt Deception: How Debt Buyers Abuse the Legal System to Prey on Lower-Income New Yorkers*, May 2010, *available at* http://nedap.org/pressroom/documents/DEBT_DECEPTION_FINAL_WEB.pdf.  Two years ago, the Montana federal district court upheld a jury's award of $301,000 against an attorney debt collector that persisted in pursuing a state court collection lawsuit despite notice that the lawsuit had no merit (the lawsuit was filed past the statute of limitations).  *McCollough v. Johnson, Rodenberg & Lauinger*, 645 F.Supp.2d 917 (D. Mont. 2009).  *See also Fausto v. Credigy Services Corporation*, No. 07-CV-5658 (N.D. Cal.), Docket No. 430 (entered May 5, 2009) (judgment for $501,000 where debt collector continued to try to collect on debt, including threats of wage garnishment, after consumers notified collector that debt had been paid).  The *McCollough* court noted that the damages were justified because of evidence that the defendant attorney debt collector "took a 'factory' approach to litigation, filing a high volume of lawsuits against alleged debtors based upon scant, often unverified information."  *Id.* at 924.  The Ninth

3

Circuit affirmed every penny of this award. *McCollough v. Johnson, Rodenberg & Lauinger*, 637 F.3d 939 (9th Cir. 2011).

Suing the wrong person where that person's name is the same name as the debtor's name has become endemic with these high volume attorney debt collector operations. In rejecting an attorney debt collector's argument that the person whom it had harassed – a person named Elaine Johnson, the same name as the debtor – should not be afforded the protections of the FDPCA, because she was not the true debtor, the federal district court for the Middle District of North Carolina observed:

> Indeed, to read the FDCPA in this manner would allow unscrupulous debt collectors, and particularly buyers of junk debt who cannot verify the accuracy of the debts or the identities of the debtors, to simply file debt collection actions with impunity against all persons having a similar name as the debtor, on the chance that one of the named defendants is the true debtor, or that one of the named defendants will simply pay the debt allegedly owed under the threat of having a judgment obtained against them, with a resulting levy against their property.

*Johnson v. Bullhead Investments, LLC*, No. 1:09-CV-639, 2010 U.S. Dist. LEXIS 2382 at *16 (M.D. N.C. Jan. 11, 2010). It is undisputed that Farrell & Seldin has already been sued at least twice for pursuing the wrong person. *See Burton v. Midland Credit Management, Inc.*, No. CV-07-258 (Bernalillo County District Court); *Garcia v. Midland Credit Management, Inc.*, No. CV-06-10278 (Bernalillo County District Court).

## II.    Plaintiff Seeks Actual and Punitive Damages

Plaintiff brings three claims, all of which have survived two motions of summary judgment completely intact. Docket No. 121, Opinion; Docket No. 132, Opinion.

4

A.     **The Fair Debt Collection Practices Act**

Plaintiff's first claim is for violations of the Fair Debt Collection Practices Act, 15 U.S.C.

§§ 1692 *et seq.* ("FDCPA").   In enacting the FDCPA in 1977, Congress stated "[i]t is the purpose

of this title to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692.

As a result of hearings that led to the passage of the FDCPA, Congress had found that, "[t]here is

abundant evidence of the use of abusive, deceptive and unfair debt collection practices by many

debt collectors." In the Tenth Circuit, the FDCPA "should be construed liberally in favor of the

consumer." *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002) (*"Johnson I"*) *citing* 15

U.S.C. § 1692(e).

1.     **The FDCPA is a strict liability statute**

The majority of courts, including this Court, consider the FDCPA a strict liability statute.

*Russey v. Rankin*, 911 F.Supp. 1449, 1455 (D. N.M. 1995) ("FDCPA imposes strict liability on

the debt collector"). *See also Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162,

1175 (9th Cir. 2006) ("[FDCPA's] broad language seems to make the FDCPA a strict liability

statute"); *Russel v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d. Cir. 1996) ("Because the [FDCPA]

imposes strict liability, a consumer need not show intentional conduct by the debt collector to be

entitled to damages"); *Taylor v. Perrin, Landry, deLaunay and Durand*, 103 F.3d 1232, 1238-39

(5th Cir. 1997); *Shapiro v. Haenn*, 222 F.Supp.2d 29, 43 n. 8 (D. Me. 2002) ("Because the

FDCPA is a strict liability statute . . . debt collectors are liable if they perform any intentional act

that results in a violation, regardless of fault").  "A plaintiff need not prove an error was

intentional" to establish liability. *Reichert v. National Credit Systems, Inc.*, 531 F.3d 1002, 1004

(9th Cir. 2008). *See also Irwin v. Mascott*, 112 F.Supp.2d 937, 963 (N.D. Cal. 2000) ("proof of

5

intent is not necessary to establish an FDPCA violation"); *Duncan v. Citibank, N.A.*, No. 06-CV-246, 2006 U.S. Dist. LEXIS 95351 at *12-13 (D. N.M. June 30, 2006) (it would make little sense to read an intent requirement into the FDCPA since the bona fide error defense requires proof of lack of intent).

### 2.      Attorneys are liable under the FDCPA

Attorney debt collectors like Farrell & Seldin are proper FDCPA defendants.  In *Campos v. Brooksbank*, 120 F.Supp.2d 1271, 1274 (D. N.M. 2000), an earlier FDCPA lawsuit brought in this District against an attorney debt collector, the Honorable James A. Parker held that "[l]awyers engaged in litigation are subject to the FDCPA." *See also Heintz v. Jenkins*, 514 U.S. 291, 294 (1995). ("The [Fair Debt Collection Practices] Act does apply to lawyers engaged in litigation."). Indeed, the FDCPA formerly included an exemption for attorneys, but this exemption was removed by Congress in 1986 because some attorneys used this exemption to take the actions forbidden to debt collectors under the cover of their bar license. *See* H.R.Rep. 99-405 (1985), 1986 U.S. Code Cong. & Admin. News 1752.

### 3.      FDCPA provides for actual damages and statutory damages

The FDCPA provides for actual damages *plus* statutory damages.  15 U.S.C. § 1692k(a).  The term "actual damages" is construed broadly under the FDCPA.  Congress left it up to the courts to define "actual damages" in accordance with the purpose and structure of the FDCPA.  Section 813-2 of the Federal Trade Commission Official Staff Commentary on the FDCPA, 53 F.R. 50097-50110 (December 13, 1988), states:

> The courts have awarded "actual damages" for FDCPA violations that were not just out-of-pocket expenses, but included damages for personal humiliation, embarrassment, mental anguish, or emotional distress.

*See also Cannon v. SC & Associates LLC*, No. 1:09-CV-2981, 2009 U.S. Dist. LEXIS 73433 at

*4 (N.D. Ill. Aug. 18, 2009) ("As noted by myriad courts ruling on FDCPA claims, emotional

distress damages are actual damages deserving of compensation").

The statutory damages are considered to be in the nature of punitive damages. *See*

*Johnson v. Eaton*, 80 F.3d 148, 152 (5th Cir. 1996) (FDCPA statutory damages are "punitive

damages, designed to punish [the defendant] for his wrongful acts"); *Sanders v. Jackson*, 209

F.3d 998, 1002 (7th Cir. 2000) (calling FDCPA statutory damages a "penalty" and "statutory

punitive damages"). FDCPA statutory damages are capped at $1,000. 15 U.S.C. §

1692k(a)(2)(A).

### B.    Violation of the New Mexico Unfair Practices Act

Plaintiff's second claim is for violations of the New Mexico Unfair Practices Act, NMSA

1978 §§ 57-12-1 *et seq.* ("UPA"). The New Mexico legislature expressly provided that the UPA

covers "the collection of debts." NMSA 1978 § 57-12-2(D). *See also Billsie v. Brooksbank*, 525

F.Supp.2d 1290, 1295 (D. N.M. 2007) (aiming collection tactics at the wrong person can support

claim under UPA). Via the UPA, the New Mexico legislature provides for actual damages to be

trebled, at the Court's discretion, if the jury finds the defendant acted wilfully. NMSA 1978 §

57-12-10(B).

The UPA is also construed broadly to further its consumer protection purpose. The New

Mexico Supreme Court recently emphasized that the UPA provides a primary building block of

New Mexico's "fundamental policy" to ensure that consumers have broad and adequate redress

for unfair and deceptive trade practices. *Fiser v. Dell Computer Corporation*, 2008 NMSC 46,

9-11, 144 N.M. 464, 467, 188 P.3d 1215, 1219-20 (N.M. 2008). New Mexico courts have time

7

and time again affirmed the UPA should be given "the broadest possible application" in order to fulfill its remedial purpose. *See Ashlock v. Sunwest Bank of Roswell*, 107 N.M. 100, 102, 753 P.2d 346, 348 (N.M. 1988) (UPA should be interpreted to ensure "the protection of its broad application to innocent consumers"); *Lohman v. Daimler-Chrysler Corporation*, 2007 NMCA 100, 25, 142 N.M. 437, 442-43, 166 P.3d 1091, 1096-97 (N.M. Ct. App. 2007) *cert. denied* 142 N.M. 434, 166 P.3d 1088 (N.M. 2007) ("The remedial purpose of the [UPA], as a consumer protection measure, is also consistent with the broadest possible application."); *State ex rel Stratton v. Gurley Motor Company*, 105 N.M. 803, 808, 737 P.2d 1180, 1185 (N.M. Ct. App. 1987) (UPA is to be liberally interpreted to accomplish its consumer protection purpose and intent). The UPA damages provision is without limitation as to the type of actual damages that can be awarded once some amount of pecuniary damages are shown. NMSA 1978 § 57-12-10(B). *See also Hale v. Basin Motor Company*, 110 N.M. 314, 321, 795 P.2d 1006, 1013 (N.M. 1990) ("[c]ertainly, high among the factors motivating legislatures to enact laws such as we are considering today is the frustration experienced by consumers having to run around to straighten out unfair or deceptive trade practices"). This Court has permitted a jury instruction for "humiliation and aggravation" damages under the UPA. *Pedroza v. Lomas Auto Mall, Inc.*, No. 07-CV-591 (D. N.M.), Docket No. 464 (filed 5/27/09), Instruction No. 56.

**C.  Tortious Debt Collection**

Plaintiff's third claim is a common law claim unique to New Mexico termed tortious debt collection. *See Montgomery Ward v. Larragoite*, 81 N.M. 383, 467 P.2d 399 (N.M. 1970). *See also Billsie*, 525 F.Supp.2d at 1297; *Kolker v. Sanchez*, No. 90-CV-1082, 1991 U.S. Dist. LEXIS 20783 at *1 (D. N.M. Dec. 10, 1991) (*Montgomery Ward v. Larragoite* renders "unreasonable

debt collection techniques . . . actionable"). This claim is akin to an invasion of privacy claim. *Montgomery Ward*, 81 N.M. at 385, 467 P.2d at 401. Punitive damages are available under this claim. *Id.* (affirming punitive damages award for tortious debt collection although reducing amount). *See also Akins v. United Steel Workers of America, AFL-CIO, CLC, Local 187*, 148 N.M. 442, 449, 237 P.3d 744, 751 (N.M. 2010) ("Nor are we aware of any common-law cause of action in New Mexico for which punitive damages have been prohibited.").

The New Mexico Supreme Court in *Montgomery Ward* made clear that tortious debt collection was akin to the tort of invasion of privacy. 81 N.M. at 385, 467 P.2d at 401. It is well established that "under the common law, damages for emotional distress [are] awardable for invasion of privacy." *Orekoya v. Mooney*, 330 F.3d 1, (1st Cir. 2003) *overruled on other grounds Doe v. Chao*, 540 U.S. 614, 618 (2004). *See also Time. Inc. v. Hill*, 385 U.S. 374, 386 n.9 (1967) ("In the 'right to privacy' cases the primary damage is the mental distress . . ."); 62A Am. Jur. 2d *Privacy* § 106 (2002); *Restatement (Second) of Torts* § 652H (1977). The New Mexico Supreme Court has expressly recognized that emotional distress type damages can be awarded for invasion of privacy. *Apodaca v. Miller*, 79 N.M. 160, 164, 441 P.2d 200, 204 (N.M. 1968) (damages for invasion of privacy "are directed primarily at compensating for mental injury, or injury to feelings resulting therefrom, whether or not there has been any physical contact or injury"). Moreover, the Tenth Circuit has held that "the common law tort of invasion of privacy" contemplated that "mental distress or embarrassment would be a natural and probable consequence of such an invasion." *Parks v. United States Internal Revenue Service*, 618 F.2d 677, 683 (10th Cir. 1980).

**D.  Plaintiff Concedes That She Is Entitled to Only One Recovery of Actual and Punitive Damages**

Plaintiff concedes that the actual damages are the same for each of her claims and that she can only recover one award of exemplary damages: statutory damages under the UPA or treble damages under the UPA or punitive damages under tortious debt collection. However, the jury is entitled to consider and award actual and exemplary damages under each claim. *See Edward Greenbland Enterprises v. Pepper*, 538 P.2d 389 (Ariz. 1975) (it is inconsistent with the alternate pleadings rules to require an election of remedies before submission to the jury); *Alvarez v. Puleo*, 561 So.2d 437 (Fla. Ct. App. 1990) (same). If the jury's decision allows for it, judgment can be entered on all claims, with damages awarded for each claim, provided the judgment also contains a provision preventing double recovery by only allowing the recovery of actual damages one time, and allowing only one recovery of exemplary damages.

**III.  Plaintiff Will Present Sufficient Evidence in Support of Her Emotional Distress Damages**

As a result of Farrell & Seldin's actions, Plaintiff has suffered actual damages, including embarrassment, aggravation and frustration. *See* Docket No. 1, complaint (filed 3/29.10), ¶ 50. She intends to present significant evidence of this emotional distress. As discussed *supra* II(A), (B) and (C), all three of Plaintiff's claims provide for an award of emotional distress damages.

The standard of proof for emotional distress damages is the same for all three of Plaintiff's claims. Under certain federal statutes, including the FDCPA, emotional distress damages are available as a possible species of damages to be proven under the federal standard of proof. *Accord Norfolk & Western Railway Company v. Ayers*, 538 U.S. 135, 157 (2003) (holding that "without proof of physical manifestations of the claimed emotional distress" a plaintiff can

still recover emotional distress damages under the Federal Employers' Liability Act). As the

United States Supreme Court stated in *Carey v. Piphus*, 435 U.S. 247 (1978):

> [W]e foresee no particular difficulty in producing evidence [of] mental and emotional
> distress . . . Distress is a personal injury familiar to the law, customarily proved by
> showing the nature and circumstances of the wrong and its effect on the plaintiff.

*Id.* at 263-64. The Supreme Court then stated how emotional distress could be proven in federal

courts: "Although essentially subjective, genuine injury in this respect may be evidenced by

one's conduct and observed by others." *Id.* at 264, n.20. Thus, the federal standard of proof for

emotional distress damages generally requires either specific and credible testimony from the

plaintiff herself or more generalized testimony from the plaintiff corroborated by another who

witnessed the emotional distress. *See Anderson v. Conwood Company*, 34 F.Supp.2d 650, 655-

56 (W.D. Tenn. 1999) (under Fair Credit Reporting Act, upholding (but reducing to $50,000)

actual damages awarded under FDCPA on record "void of any proof of damages beyond

plaintiff's testimony of worry, stress, anxiety, loss of sleep and expense in bringing the

litigation"). The Tenth Circuit has adopted this standard. *O'Neal v. Ferguson Construction

Company*, 237 F.3d 1248, 1257 (10th Cir. 2001) ("This court concludes the testimony of Mr. And

Mrs. O'Neal enabled the jury to reasonably determine that Mr. O'Neal would suffer future

emotional distress."); *Atchley v. Nordam Group, Inc.*, 180 F.3d 1143, 1149-50 (10th Cir. 1999)

(affirming award of emotional distress damages based solely on testimony of plaintiff); *Roberts v

Roadway Express, Inc.*, 149 F.3d 1098, 1105 n.4 (10th Cir. 1998) (medical or other expert

testimony not required to prove emotional distress).

   The state law tort of intentional infliction of emotional distress is something else entirely

from the federal standard of proof for emotional distress. *See Malik v. Apex International Alloys,*

11

*Inc.*, 762 F.2d 77, 81 (10th Cir. 1985) (rejecting argument that plaintiff must prove up tort of intentional infliction of emotional distress to recover emotional distress under statute prohibiting retaliation for filing worker's compensation claim).  The state court standards of proof derived from this common law tort are simply not applicable to federal statutory law.  The fact that both the federal statutory cause of action and the state common law cause of action may result in liability for emotional distress damages does not mean the two claims were meant to be coextensive or even possess doctrinal overlap.

For example, in New Mexico the common law tort of intentional infliction of emotional distress requires "extreme and outrageous" intentional or reckless behavior on the part of the defendant resulting in "extreme and severe" mental stress.  *Baldonado v. El Paso Natural Gas Company*, 2008 NMSC 5, 27, 143 N.M. 288, 294, 176 P.3d 277, 283 (N.M. 2008).  But federal courts have nearly universally rejected the importation of such a stringent standard into FDCPA jurisprudence as contrary to the purpose of the FDCPA and contrary to the FDCPA's status as a strict liability statute.  *See Riley v. Giguiere*, 631 F.Supp.2d 1295, 1315-16 (E.D. Cal. 2009) ("Put plainly, it is not proper for the court to insert an intent requirement into plaintiff's recovery for emotional distress damages [by requiring the same standard of proof as required under intentional infliction of emotional distress] where Congress has not done so"); *Davis v. Creditors Interchange Receivable Management, LLC*, 585 F.Supp.2d 968, 973 (N.D. Ohio 2008) ("plaintiffs need not satisfy the elements of the tort of intentional infliction of emotional distress before the jury can find that the defendants caused them actual damages" because "[t]he FDCPA's drafters were greatly concerned about emotional harms inflicted by abusive debt collectors" and wanted to provide a more lenient method of recovery for such damages).

The Tenth Circuit has not yet squarely addressed debt collectors' perennial argument that a FDCPA plaintiff must meet the state law proof standard for intentional infliction of emotional distress in order to recover emotional distress type damages under the FDCPA. However, this District has decided the issue. This Court has held that proof standards from state law concerning intentional infliction of emotional distress cannot be imported into the FDCPA to render the burden of proof for FDCPA emotional distress damages more stringent. *Garbin v. Lenahan, et al.*, No. 04-CV-409 (D. N.M.), Docket No. 16, ¶ 55 (filed 10/29/04) ("A plaintiff can establish actual damages for emotional distress [under the FDCPA] without proving the state law elements of intentional infliction of emotional distress."). Furthermore, decisions from other district courts within the Tenth Circuit, while not directly addressing the question, reject the argument that a FDCPA plaintiff must provide medical testimony if the plaintiff is to recover emotional distress damages. *McCammon v. Bibler, Newman & Reynolds, P.A.*, 493 F.Supp.2d 1166, 1172 (D. Kan. 2007) ("the court concludes [defendant] has offered no authority for its proposition that the plaintiffs cannot recover damages for their FDCPA claims without expert testimony, nor has the court located any such authority."); *Bynum v. Cavalry Portfolio Services, L.L.C.*, No. 04-CV-515, 2006 U.S. Dist. LEXIS 16911 at *5 (N.D. Okla. Mar. 31, 2006) (defendant "has offered no legal support for the proposition that a plaintiff suing for damages under the FDCPA must provide expert testimony in order to establish causation").

Concerning the standard of proof for emotional distress damages under New Mexico law, it is clear that the New Mexico standard mirrors the federal standard announced by the United States Supreme Court in the *Carey* opinion. New Mexico courts also hold that either sufficiently detailed testimony by the plaintiff herself or more generalized but corroborated testimony is

13

sufficient. *Jacobs v. Meister*, 108 N.M. 488, 775 P.2d 254 (N.M. Ct. App. 1989) *cert. denied*
108 N.M. 582, 775 P.2d 1299 (1989). The *Carey* standard of proof was expressly adopted by the
New Mexico Court of Appeals in *Jacobs, supra.* As pointed out by the *Jacobs* court, this
standard is consistent with preexisting New Mexico case law on what was needed to prove
emotional distress damages. *Id.* at 495-96, 261-62. In the opinion to which the *Jacobs* court
cited as proof of this proposition, *id.* at 495, 261, the New Mexico Court of Appeals held that a
plaintiff's specific testimony about his emotional distress was sufficient proof. *Sweitzer v.
Sanchez*, 80 N.M. 408, 410-11, 456 P.2d 882, 884-85 (N.M. Ct. App. 1969).

## IV.   Plaintiff Will Present Sufficient Evidence to Support Entitlement to Punitive Damages

Plaintiff intends to present evidence of Farrell & Seldin's intent, absence of mistake and
unreasonableness with its three year pursuit of Plaintiff despite clear and repeated evidence that
she did not owe the debt. Plaintiff also intends to present pattern and practice evidence that will
show Farrell & Seldin, as a practice, unreasonably ignores debtors who assert identity issues, and
instead steamrolls ahead until the putative debtor retains an attorney. This evidence strongly
supports a punitive damages award.

Under New Mexico law, punitive damages are available where the defendant actions are
"willful, wanton, malicious, reckless, oppressive, or fraudulent." *Clay v. Ferrellgas, Inc.*, 118
N.M. 266, 269, 881 P.2d 11, 14 (N.M. 1994). *See also* UJI Civil No. 13-1827 (punitive damages
can be awarded for malicious, willful, reckless, wanton, fraudulent or bad faith conduct). A
corporate defendant can be held liable for punitive damages based on the cumulative conduct of
its employees. *Clay*, 118 N.M. at 270, 881 P.2d at 15 (New Mexico courts view "the actions of
the employees in the aggregate to determine whether [the defendant] had the requisite mental

14

state"). *See also Grassie v. Roswell Hospital Corporation*, 2011 NMCA 24, 30-32, ___ N.M.

___, ___ P.3d ___, 2010 N.M. App. LEXIS 161 at \*20-22 (N.M. Ct. App. Nov. 30, 2010). Here,

the evidence will show not only intent, but also that Farrell & Seldin acted recklessly and in bad

faith.

Of all the different types of evidence that can support a substantial punitive damages

award, evidence that shows "the degree of reprehensibility of the defendant's conduct" is the

most important. *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575 (1996) ("Perhaps the

most important indicium of the reasonableness of a punitive damages award is the degree of

reprehensibility of the defendant's conduct."); *United Phosphorus, Ltd. v. Midland Fumigant,

Inc.*, 205 F.3d 1219, 1229 (10th Cir. 2000) ("Reprehensibility is the most important guidepost for

determining the reasonableness of a punitive damages award."). Of course, to the extent that

evidence tends to show the unreasonableness of the defendant's conduct, this evidence also tends

to show the reprehensibility of the conduct. *See Bielicki v. Terminix International Company,

L.P.*, 225 F.3d 1159, 1165 (10th Cir. 2000) *quoting BMW of North America, Inc.*, 517 U.S. at 579

("To determine reprehensibility, we examine whether . . . the evidence 'discloses deliberate false

statements, acts of affirmative misconduct, or concealment of evidence of improper motive.'")

(ellipses in quotation omitted); *Deters v. Equifax Credit Information Services, Inc.*, 202 F.3d

1262, 1273 (10th Cir. 2000) (affirming district court's refusal to reduce punitive damages award

because "the jury certainly could have perceived [the defendant's] lack of an effective response

as recklessly indifferent"). Of the evidence that goes to reprehensibility, pattern and practice

evidence is the most significant. *BMW of North America, Inc.*, 517 U.S. at 577 ("repeated

misconduct is more reprehensible than an individual instance of malfeasance").

Evidence of prior lawsuits against the same defendant based on the same conduct at issue in the current lawsuit supports a substantial punitive damage award because it shows "consciousness of wrongdoing, such that Defendant should have expected, or had notice, that legal punishment was likely." *Aken v. Plains Electric Generation and Transmission Cooperative, Inc.*, 2002 NMSC 21, 21, 132 N.M. 401, 409, 49 P.3d 662, 670 (N.M. 2002). *See also BMW of North America, Inc.*, 517 U.S. at 579 (in striking down punitive damages award, noting "it is also significant that there is no evidence that [defendant] persisted in a course of conduct after it had been adjudged unlawful on even one occasion, let alone repeated occasions"). Moreover, the pattern shown by the prior lawsuits (and repeated in the conduct that underlies this lawsuit) – that is, that Farrell & Seldin does not take the putative debtor's identity dispute seriously until the putative debtor retains an attorney – is, according to the Tenth Circuit, entitled to special consideration when assessing punitive damages. *See Continental Trend Resources, Inc.*, 101 F.3d at 642 (in considering a substantial punitive damages award, one important factor is the extent that a "rich defendant may act oppressively and force or prolong litigation simply because it can afford to do so and a plaintiff may not be able to bear the costs and the delay").

**V.   Farrell & Seldin Bear the Burden of Proof on Bona Fide Error, a Narrow Exception to Strict Liability Under the FDCPA**

The bona fide error defense is expressly provided for in the FDCPA:

A debt collector may not be held liable in any action brought under [the FDCPA] if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

16

15 U.S.C. § 1692k(c). In the Tenth Circuit, for a debt collector defendant to prevail under the

bona fide error defense, the debt collector must show "that the violation was (1) unintentional,

(2) a bona fide error, and (3) made despite the maintenance of procedures reasonably adapted to

avoid the violation." *Johnson I*, 305 F.3d at 1121 (quotations omitted) *overruled on other*

*grounds by Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, ___ U.S. ___, 130 S.Ct.

1605, 176 L.Ed.2d 519 (2010) (FDCPA bona fide error defenses does not cover mistakes of law).

 "The FDCPA's bona fide error defense provides a narrow exception to [the FDCPA's] strict

liability." *McCollough v. Johnson, Rodenberg & Lauinger*, 610 F.Supp.2d 1247, 1257 (D. Mont.

2009).

 "The bona fide error defense is an affirmative defense for which the debt collector has the

burden of proof." *McCollough*, 610 F.Supp.2d at 1257. *See also Johnson I*, 305 F.3d at 1121

("an FDCPA defendant seeking the protection of the bona fide error defense carries the burden of

proving" the applicability of the defense). It is not enough for Farrell & Seldin to argue that it

did not intend to violate the FDCPA because, under the bona fide error test, "a debt collector's

conduct may be intentional even if he lacked the actual knowledge that his conduct violated the

FDCPA." *Bassett v. I.C. System, Inc.*, 715 F.Supp.2d 803, 813 (N.D. Ill. 2010) *citing Jerman*,

130 S.Ct. at 1612. It is not enough for Farrell & Seldin to establish that an error took place

because the error must be shown to be ***bona fide***. *Owen v. I. C. System, Inc.*, 629 F.3d 1263,

1277 (11th Cir. 2011) ("the debt collector has an affirmative statutory obligation to . . . avoid

readily discoverable errors."). Nor is it enough for Farrell & Seldin to simply assert that it had

appropriate preventative procedures in place; rather, Farrell & Seldin must prove the procedures

actually existed. *Reichert*, 531 F.3d at 1007 ("If the bona fide error defense is to have any

17

meaning in the context of a strict liability statute, then a showing of 'procedures reasonably adapted to avoid any such error' must require more than a mere assertion to that effect."). Farrell & Seldin also must prove that it "'maintained' – *i.e.*, actually employed or implemented – procedures to avoid errors." *Johnson v. Riddle*, 443 F.3d 723, 729 (10th Cir.) ("*Johnson II*").

A wide range of evidence can serve to debunk a bona fide error defense. *Id.* (plaintiff can rebut claim of bona fide error "by inferential evidence"). Farrell & Seldin's failure to meet any one of the three elements with bona fide error means the defense fails. *Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1354 (11th Cir. 2009) ("Because Niagara has failed to meet either of the first two requirements of the bona fide error defense of § 1692k(c), we need not decide whether it also has failed to meet the third one, which requires the maintenance of procedures reasonably designed to avoid the violation of the Act.").

For Farrell & Seldin to prevail under bona fide error, it must show that its claimed error was objectively reasonable. *Kort v. Diversified Collection Services, Inc.*, 394 F.3d 530, 538 (7th Cir. 2005) ("Bona fide" means that the error resulting in the violation was "made in good faith; a genuine mistake, as opposed to a contrived mistake."); *Johnson II*, 443 F.3d at 729 ("in effect, [the bona fide] component serves to impose an objective standard of reasonableness upon the asserted unintentional violation"). "[W]hether the debt collector's mistake was bona fide will turn on the debt collector's due diligence practices." *Johnson II*, 443 F.3d at 729. Moreover, a defendant "must establish a bona fide error for each and every alleged violation of the FDCPA," *Caputo v. Professional Recovery Services, Inc.*, 261 F.Supp.2d 1249, 1259 (D. Kan. 2003). Accordingly, Farrell & Seldin must explain the due diligence procedures it claims to have had in place that should have prevented not only the initial substitution of the debtor's social security

18

number with Plaintiff's social security number, but also the first garnishment action, and the second, the latter of which occurred after it had received repeated notice from Plaintiff and her employer that it was pursuing the wrong person.  Farrell & Seldin also must explain why it did not quit in its pursuit of Plaintiff until after Plaintiff retained counsel and filed this lawsuit, three years after it had begun its wrongful pursuit.

Now that the United States Supreme Court has decided *Jerman, supra*, in which the Court overruled what had been the law in the Tenth Circuit – that mistakes of law could be deemed "errors" under the bona fide error defense, *see Johnson I*, 305 F.3d at 1121 *overruled by Jerman, supra* – Farrell & Seldin must prove that its pursuit of Plaintiff was a clerical or procedural error rather than an error in judgment.  Where the claimed error involves an error of judgment – like the mistake of law that the *Jerman* court considered – bona fide error does not apply.  *See Owen*, 629 F.3d at 1272 (interpreting (and quoting) *Jerman*, noting "The Supreme Court contrasted these procedures [procedures that could be covered by bona fide error] with procedures maintained to avoid mistakes in legal reasoning, which 'is not a mechanical or strictly linear process.'"); *Allen v. Checkredi of Kentucky, LLC*, No. 09-CV-103, 2010 U.S. Dist. LEXIS 122301 at *30 (E.D. Ky. Nov. 17, 2010) ("Defendant's act of orally communicating that Plaintiff owed a debt to Plaintiff's father was intentional" and thus bona fide error could not apply); *McNall v. Credit Bureau of Josephine County, Inc.*, No, 07-CV-3075, 2010 U.S. Dist. LEXIS 85619 at *9 (D. Or. Aug. 19, 2010) (bona fide error unavailable where defendant "made a conscious decision not to report Plaintiff's debt as disputed"); *Bassett*, 715 F.Supp.2d at 813 (because debt collector's "defense is not based on a clerical or procedural error" debt collector cannot claim bona fide error defense).

19

Review of similar lawsuits where the debt collector raised a bona fide error defense is instructive. In *Knighten v. Palisades Collections, LLC*, 721 F.Supp.2d 1261 (S.D. Fla. July 6, 2010), the court rejected the debt collector's bona fide error defense. This lawsuit involved the debt collector's continued pursuit of a state court debt collection lawsuit despite a lack of standing. *Id.* at 1263. The *Knighten* court found that certain facts eliminated the bona fide error defense. One fact was "that [Palisades' attorneys] had documents reflecting that Unifund owned the debt" which put Palisades "on notice of the lack of standing." *Id.* at 1270. Another fact was the failure of Palisades to conduct a reasonable investigation into the standing issue before it filed the state court lawsuit and, later, when the debtor raised the issue: "[Palisades' attorneys] should have conducted adequate research to ascertain the correct owner of the account before filing and maintaining the lawsuit." *Id.* at 1271.

In *Burke v. Messerli & Kramer P.A.*, No. 09-CV-1630, 2010 U.S. Dist. LEXIS 81091 at *2-6 (D. Minn. Aug. 9, 2010), the court considered FDCPA claims against an attorney debt collector that had persisted with collection efforts despite notice from the debtor that she had paid the debt through an earlier settlement directly with the creditor. The *Burke* court rejected the attorney debt collector's argument that is should be excused from any violation under bona fide error because it did not know about the settlement when it first began its collection efforts.

> [T]he claim is not that Messerli violated § 1692e(2)(A) by representing in the initial demand letter that Burke owed the debt; rather, her claim is that Messerli violated the Act when, after Burke disputed the debt, it continued to represent that Burke owed the debt without verifying the debt.

2010 U.S. Dist. LEXIS 81091 at *23-24. Moreover, the court noted:

> Once Burke disputed the debt, the reasonable procedure to avoid this violation would have been for Messerli to verify the nature and status of the debt *before* sending another communication to Burke that expressly stated it was "an attempt to collect a

debt." Had Messerli followed the procedure of contacting Capital One to verify the debt, it presumably would have learned that the debt had been resolved.

*Id.* at \*24 (emphasis in original).

Bona fide error was rejected by the Montana federal district court in *McCollough*, 610

F.Supp.2d at 1249, a lawsuit involving an attorney debt collector's continued wrongful

prosecution of a state court debt collection lawsuit. The *McCollough* court found dispositive the

fact that no genuine investigation was undertaken until months after the plaintiff provided notice

of the statute of limitations issue and not until the plaintiff obtained a lawyer.

> JRL [the attorney debt collector] did not seek documentation of McCollough's debt until McCollough obtained a lawyer, months after JRL filed suit, months after McCollough asserted the statute of limitations in his answer, weeks after it served discovery on McCollough.

*Id.*

Respectfully submitted:

TREINEN LAW OFFICE, Attorneys for Plaintiff

ROB TREINEN
500 Tijeras Ave NW
Albuquerque, New Mexico 87102
(505) 247-1980
(505) 843-7129 (fax)

I CERTIFY that I served a copy of the foregoing pleading by mailing the same to Jack Brant, attorney for Defendants Law Offices of Farrell & Seldin and Target National Bank, at Law Office of Jack Brant PC, 22 Tulane Dr SE, Albuquerque, New Mexico 87106-1414, on June 27, 2011.

ROB TREINEN